Argued September 11, affirmed as modified October 24,
petition for rehearing denied November 13, 1974

## PALMORE, *Respondent, v.* KIRKMAN
## LABORATORIES, INC. ET AL, *Appellants.*
### 527 P2d 391

*Ridgway K. Foley, Jr.,* Portland, argued the cause for appellant Kirkman Laboratories, Inc. With him on the briefs were Souther, Spaulding, Kinsey, Williamson & Schwabe and Gordon Moore, Portland.

*Gerald R. Pullen,* Portland, argued the cause and filed a brief for appellant Richard Hansen Fowler.

*Raymond J. Conboy,* Portland, argued the cause for respondent. With him on the brief were Pozzi, Wilson & Atchison and Donald N. Atchison, Portland.

Before O'CONNELL, Chief Justice, and McALLISTER, HOLMAN, HOWELL and SLOPER, Justices.

SLOPER, J. (Pro Tempore)

This case is an action at law for personal injuries sustained by the four-year-old plaintiff who was a passenger in an automobile being driven by his mother, his guardian ad litem, which collided at an intersection with a vehicle being driven by defendant Fowler, who at the time of the accident was allegedly an employee of and in the course of such employment of codefendant Kirkman Laboratories, Inc. Trial was had to a jury which returned a verdict in favor of plaintiff against both defendants. Both defendants appeal.

The assignments of error of the respective defendants are to a degree separate and distinct. The assignment of defendant Kirkman will be considered first.

Kirkman's assignment of error is that the trial court erroneously refused to hold Kirkman not liable as a matter of law. This general assignment is broken down into five subdivisions. The first two are that the court erred in (1) failing to grant an order of involuntary nonsuit at the close of plaintiff's case in chief, and (2) failing to grant a directed verdict in favor of Kirkman after Kirkman had rested without offering evidence. The remaining three subdivisions are the trial court's refusal to withdraw from the jury's consideration each of the three specifications of negligence alleged in plaintiff's complaint on the ground that there was no evidence to support any of them. These three allegations of negligence concern speed, lookout and control. These matters will be considered together. The basis for the alleged error is that plaintiff failed to prove that any act of negligence proximately caused the accident and plaintiff failed to establish that defendant Fowler was acting within the course and scope of his employment at the time of the accident. It was admitted that Fowler was employed by Kirkman.

■ The accident occurred at the uncontrolled intersection of NE Oregon and NE 25th Street in Portland. These are both narrow streets, one has parking on both sides and the other has parking on one side only. NE 25th Street is 30 feet wide and NE Oregon is 35 feet wide. The vehicle in which plaintiff was a passenger was proceeding in an easterly direction on NE Oregon Street and Fowler was proceeding in a northerly direction on NE 25th Street. Fowler had the directional right of way. It had been raining prior to the time of the accident and the pavement was wet. There was a large building on the southwest corner of the intersection. There was also a truck parked

near the corner obstructing the drivers' vision of each other. Conditions were such that neither driver 50 feet from the intersection could see 200 feet down the intersecting street. Fowler's speed as he entered the intersection was some place between 15 and 25 miles per hour. He did not observe the vehicle in which plaintiff was riding until he was five feet or less from the intersection, and he did not appear to slow his speed as he approached the intersection. Because of the obstructed view at the intersection, the designated speed was 20 miles per hour. We conclude that, at least after all the evidence was in, there was sufficient evidence of the allegations of negligence, speed, lookout and control for their submission to the jury. In *Hess v. Larson,* 259 Or 282, 486 P2d 533 (1971), the court explained the interrelation of these three elements and stated:

"The elements of speed, lookout and control are interrelated and, in most cases, it is proper if not necessary for the jury to consider them together; independent evidence of each element is not necessary. * * *." 259 Or at 289.

■ The evidence concerning whether or not Fowler at the time of the accident was acting within the course and scope of his employment comes first in plaintiff's case in chief. That evidence consisted of the following:

"Q [By Mr. Atchison] Let me ask it another way. What were you doing at the time this accident happened? What was your mission or purpose?

A I was returning from a paint store which I had gone to to purchase a couple of gallons of paint for painting the inside of the laboratory where I was working.

Q So now you said this paint was to be used in the company business?

A Yes."

Additional evidence on this subject was presented during the cross examination of defendant Fowler in his case.

"Q Now, you mentioned that you were on an errand. I gather that had to do with the paint, as you told me before?

A Yes.

Q What was it you were going to paint?

MR. MOORE: Your honor, I am going to object to this as beyond anything that comes up in my case, or in the other defendant's case.

MR. ATCHISON: Your honor, he has testified that he was on an errand on his direct examination. I am certainly entitled to inquire about that.

THE COURT: What did you ask in the direct examination on that score? I thought the only time that had come in was when you called him as a witness.

MR. ATCHISON: No, no. He testified in his direct examination that he was on an errand after lunch, I think was the words he used.

MR. MALONEY: I believe he did say that, your honor.

MR. MOORE: That was the extent of it, your honor.

THE COURT: Well, I think that opens the door to more. Go ahead.

Q [By Mr. Atchison] What were you going to paint?

MR. MOORE: May I have a continuing objection?

THE COURT: Yes.

MR. MOORE: That that is beyond the scope of my case or the plaintiff's case in chief.

THE COURT: You may.

A I wasn't going to paint anything. There

were some young men painting walls in the laboratory.

Q That's at the company building?

A Yes.

Q And the paint was to be used for this purpose?

A Yes.

Q The paint was purchased in the company's name, I take it?

A Yes.

Q And what was your job in the company, incidentally?

A At that point, I was functioning as the Assistant to the Vice President who was in charge of the Quality Control Lab, and also I had the responsibility to Production in that I was handling the raw material inventory."

We conclude that the foregoing evidence was sufficient to make a jury question on whether or not Fowler was acting within the course and scope of his employment with defendant Kirkman at the time of the accident.

■ Kirkman contends that the evidence of negligence and of defendant Fowler's acting in the course of and in the scope of his employment is not chargeable to Kirkman because of Kirkman's motions for involuntary nonsuit and directed verdict, Kirkman having rested without offering evidence. However, Kirkman concedes that Oregon law controls and that this court in *Madron v. Thomson,* 245 Or 513, 529, 419 P2d 611, 423 P2d 496, 27 ALR3d 963 (1967), adopted a rule of law that is opposed to his contention. In recognizing this obstacle, Kirkman urges that *Madron v. Thomson,* supra (245 Or 513), should be reconsidered and overruled, and cites three cases from other

jurisdictions as a basis for such reconsideration. The cases are *Carson v. Weston Hotel Corp.*, 351 Ill App 523, 115 NE2d 800 (1953); *Anderson v. Howard Hall Company*, 272 Ala 466, 131 S2d 417 (1961); and *Thompson v. Hayward Chemical Co. v. Childress*, 277 Ala 285, 169 S2d 305 (1964). While these cases are supportive of Kirkman's position, they are each, to a degree, distinguishable from the facts in this case.

We said in *Madron v. Thomson,* supra (245 Or at 529):

> "A motion for a directed verdict by one defendant should not be considered until such time as all the evidence is in if there is any probability that any evidence to be offered might make out a case against the moving defendant. *Bates v. Miller,* 133 F2d 645, 648 (2d Cir 1943); *Sadler v. Draper,* 46 Tenn App 1, 16, 326 SW2d 148, 155 (1959); Annotation, 48 ALR2d 535 (1956)."

This rule of law was given careful consideration by the court and was articulated after a petition for rehearing was denied, and was a clarification of the same rule that had been adopted by the court in its first consideration of the matter, at which time the court said in *Madron v. Thomson,* supra (245 Or at 526):

> "Thomson contends that we can only consider the evidence against Thomson which was introduced prior to the time Thomson rested, which was after plaintiffs' case in chief but before Rider's testimony of Riley's admission. Thomson's motion was premature as Riley had not rested at the time of Thomson's first motion. A motion for a directed verdict is properly made after all the evidence is introduced and all the evidence introduced by any party is considered in determining the ruling upon such motion. *Mayor v. Dowsett,* 240 Or 196, 219-220, 400 P2d 234 (1965). The essence of Thomson's

contention in this regard is that the evidence of the admission was not proper rebuttal evidence against him. It was admissible against both defendants. As stated, any evidence of the employee's negligence is, by operation of the doctrine of respondeat superior, relevant to the issue of the employer's liability."

Other jurisdictions have chosen the rule we have adopted. See *Bates v. Miller,* 133 F2d 645, 648 (2d Cir 1943); *Sadler v. Draper,* 46 Tenn App 1, 326 SW2d 148 (1959), cited in *Madron v. Thomson,* supra (245 Or 513); *Lyon v. Prater,* 351 SW2d 173 (Ky 1961); and *Provins v. Bevis,* 70 Wash2d 131, 422 P2d 505 (1967), in which both defendants challenged the sufficiency of plaintiff's evidence at the close of plaintiff's case, and upon the challenge being denied, one of defendants offered evidence of the other defendant's intoxication, and the court ruled that the motion was properly denied and adopted a statement from Annotation, 48 ALR2d 535 (1956) at 536: "While the right to direct a verdict in favor of one or more of several defendants at the close of the plaintiff's case was at one time a disputed question, it now appears settled that the matter rests in the sound discretion of the court." And the court stated that the basis for adoption of the rule was the pertinent principle and rationale as expressed by Lord Denham, Ch J., in *Sowell v. Champion,* 6 Ad & El 407, 112 Eng Rep 156, 2 Nev & P 627 (1838):

" 'The application to a Judge, in the course of a cause, to direct a verdict for one or more of several defendants in trespass is strictly to his discretion; and that discretion is to be regulated, not merely by the fact that at the close of the plaintiff's case no evidence appears to affect them, but by the probabilities whether any such will arise before the whole evidence in the cause closes. There is

so palpable a failure of justice, when the evidence for the defense discloses a case against a defendant already prematurely acquitted, that such acquittal ought never to take place, but where there is the strongest reason to believe that such a consequence cannot follow.' " 70 Wash2d at 135-136.

We can see no compelling reason why this court should depart from our recent holding in *Madron v. Thomson*, supra (245 Or 513), and adopt a contrary rule.

■ Applying the rule from *Madron v. Thomson*, supra (245 Or 513), which we reaffirm in this case, our examination of the evidence persuades us that it is sufficient to survive the challenge of defendant Kirkman. The trial judge properly refused to hold that Kirkman was not liable as a matter of law.

We turn next to a consideration of defendant Fowler's three assignments of error.

The first assignment concerns the court's denial of a motion to strike the testimony of witness Dr. John Wobig because of a failure to establish a causal connection between plaintiff's injury and the automobile collision. If the medical evidence is insufficient to establish a causal connection between plaintiff's injury and the automobile accident, then, of course, plaintiff's case must fail. Fowler suggests that Dr. Wobig assumed facts from medical statistical studies that were not part of the evidence and that he had used hearsay opinions of other doctors in finding a causal connection between the automobile accident and the injury; that he did not comprehend what "reasonable medical probability" meant; and that there was a 50 per cent chance that the accident did not cause the injury. Both defendants Kirkman and Fowler cross-

examined the witness concerning these statistical studies, and defendant Fowler's medical witness, Dr. Baer, also testified concerning statistical studies and that he used such studies in his evaluation and in arriving at his opinion in the case. The reference in defendant Fowler's brief that there was a 50 per cent chance that the accident did not cause the injury is based upon an apparent error in the transcript. Dr. Wobig who reported in the transcript to have testified to the 50 per cent figure had previously testified extensively that such a percentage would be in the area of 15 per cent.

■ Dr. Wobig, plaintiff's treating physician, is a highly skilled ophthalmologist and had special training in pediatric ophthalmology. While counsel have quoted extensively in their briefs the testimony of Dr. Wobig, no useful purpose would be served to quote the same testimony herein. We find from an examination of this testimony that his opinions were based upon his own observation and treatment; that these opinions were substantiated by proper medical statistical studies; and that in his opinion and to a reasonable medical probability there was a causal connection between plaintiff's injuries and the automobile accident in question.

■ While there was conflicting medical opinion evidence, we find that there was sufficient evidence of a causal connection between the accident in question and plaintiff's injuries to submit the matter to the jury for their determination, and that the court did not err in doing so.

Fowler's second assignment of error is based upon the court's denial of an order of involuntary nonsuit. This is essentially the same error that was alleged by defendant Kirkman and it has been dis-

cussed herein previously and determined adversely to defendants. In addition, since defendant Fowler proceeded with his evidence following the denial of the motion for an order of involuntary nonsuit, the rule announced in *Ballard v. Rickabaugh Orchards, Inc.*, 259 Or 200, 203, 485 P2d 1080 (1971), is particularly applicable:

> "Defendant's first assignment of error is that 'the court erred in failing to grant defendant's motions for involuntary nonsuit and directed verdict.' Both motions will be considered together, for when the defendant did not rest upon its motion for nonsuit and proceeded to produce evidence in support of its case, this court will review the trial court's ruling thereon and will consider the whole record in the same manner as when ruling on a court's failure to grant a motion for a directed verdict. *Gordon Creek Tree Farms v. Layne et al*, 230 Or 204, 218, 358 P2d 1062, *decided on the merits* 368 P2d 737 (1962)."

Defendant Fowler's last assignment of error concerns the trial court's sustaining plaintiff's demurrer to Fowler's affirmative defense that plaintiff's mother, who was driving the car in which he was a passenger, was guilty of contributory negligence and that such contributory negligence was a defense to plaintiff's action for medical expenses.

■ Although no Oregon cases have been called to our attention on this precise issue, the majority of case law from other jurisdictions would indicate that the trial court erred in sustaining plaintiff's demurrer. It is generally held that medical expenses incurred due to the negligent injury of a minor unemancipated child are damages suffered by the parent and not the child. See cases at Annotation, 32 ALR2d 1060, 1069-1075 (1953). This rule is consistent with ORS 109.010 which

places responsibility on the parents to maintain their children, and with ORS 109.020 which limits access to the child's estate for the payment of his expenses.

Even though the medical expense damage has been incurred by the parents, the Oregon Legislature has determined that such damage may be sought in an action brought by the parent on behalf of the child. ORS 30.810 provides:

> "(1) When the guardian ad litem of a child maintains a cause of action for recovery of damages to the child caused by a wrongful act, the parent, parents, or conservator of the estate of the child may file a consent accompanying the complaint of the guardian ad litem to include in the cause of action the damages as, in all the circumstances of the case, may be just, and will reasonably and fairly compensate for the doctor, hospital and medical expenses caused by the injury.

> "(2) If the consent is filed as provided in subsection (1) of this section and the court allows the filing, no court shall entertain a cause of action by the parent, parents or conservator for doctor, hospital or medical expenses caused by the injury."

If the parents elect to follow that course, as they did in this case, they will be barred by section (2) of that statute from bringing a subsequent action in their own right. This statute, however, does not alter the fact that the claim for medical expenses is in the parent and the contributory negligence of the parent may operate to bar the recovery.

This situation is distinguishable from the case of *Adams v. Treat*, 256 Or 239, 472 P2d 270 (1970), urged upon us by the plaintiff. The *Adams* case expressed a dislike for imputing contributory negligence of a driver to a passenger. The present case does not

involve an imputation of negligence to one who was without fault. In this case we are merely recognizing the contributory negligence of the real party in interest as to the claim for medical expenses.

Several California cases have dealt with this issue. In *McManus v. Arnold Taxi Corp.*, 82 Cal App 215, 255 P 755 (1927), the court recognized that the father could pray for medical expenses in an action on behalf of the child, but also held that he could be barred by his contributory negligence.

> "* * * The right of the father in any event to recover said expenses would be subject to the defense that he contributed to the child's injuries by negligently permitting it to be and play in a place of danger; and it would follow that the right of the child to recover said expenses in the place of the father would be subject to the same defense. Such defense was pleaded as a 'fourth, separate, further, and distinct' defense in the original answer, but was eliminated from the case, on demurrer, at the instance of respondent, presumably upon the ground that such defense could not be urged in an action brought and maintained by the child. Appellant being thus deprived of the right to defend against such claim, the amount thereof could not in our opinion be afterward legally allowed to the child as an element of damage under the doctrine of waiver or emancipation." 82 Cal App at 224-225.

Subsequent cases have adhered to this principle. "Where the parent who has paid such special damages is held contributorily negligent, he may not recover such special damages, either personally or by way of recovery by the minor." *Randles v. Lowry,* 4 Cal App3d 68, 73, 84 Cal Rptr 321 (1970).

The Supreme Court of Washington has also ruled that the contributory negligence of the parent

would bar recovery of medical expenses. *Poston v. Mathers,* 77 Wash2d 329, 337, 462 P2d 222 (1969).

■ The question remains as to the effect of the error of the trial court in sustaining the demurrer to defendants' answers. In *Mattox v. Isley,* 111 Cal App2d 774, 779-780, 245 P2d 664, 668 (1952), the California court ruled that where the affirmative defense of contributory negligence of the parent had been erroneously stricken, the judgment awarded to plaintiff must be reduced by the amount of the medical expenses which would have been barred by the contributory negligence. In this case counsel stipulated to the reasonableness of plaintiff's medical expenses in the sum of $1,245.25. It is apparent that the jury awarded plaintiff $40,000, plus the medical specials of $1,245.25 by their verdict in the sum of $41,245.25. We, therefore, reduce the judgment by the amount of $1,245.25.

Except as so modified, the judgment of the trial court is affirmed.