*469 Defendant appeals a judgment of conviction for two counts of second-degree rape, ORS 163.365 (Counts 1 and 2), two counts of second-degree sodomy, ORS 163.395 (Counts 3 and 4), two counts of second-degree unlawful sexual penetration, ORS 163.408 (Counts 5 and 6), two counts of first-degree sexual abuse, ORS 163.427 (Counts 7 and 8), one count of unlawful delivery of methamphetamine to a minor, ORS 475.890(3) (Count 10), and four counts of compelling prostitution, ORS 167.017 (Counts 13, 16-18). Defendant assigns error to the trial court's imposition of three $50,000 compensatory fines on Counts 16 through 18. Defendant also advances as unpreserved contention that the court erred by imposing $9,290 in court-appointed attorney fees. We conclude that the trial court erred by imposing both the compensatory fines and the attorney fees, and we reverse those portions of the judgment.
In the fall of 2012, defendant met S, a 13-year-old girl who had recently run away from home, outside of his Beaverton apartment. He allowed her to live with him for several weeks. During that time, defendant provided S with drugs, raped and sexually abused her, and induced her to engage in prostitution.
In July of the following year, the Department of Human Services (DHS), S's legal guardian at the time, sent S to Mingus Mountain, a facility in Arizona for girls who are at risk behaviorally and emotionally and for whom other treatment had not been effective. She stayed there for nearly a year. During a counseling session a few months *1091 after she arrived there, S first alerted authorities to defendant's crimes.
Defendant was eventually charged with and convicted of the crimes described above. During trial, S's former DHS caseworker testified that S's treatment at Mingus Mountain had been covered by her Oregon Health Plan (OHP) insurance, which all juveniles automatically receive while they are in the temporary custody of DHS.
At sentencing, in addition to imposing a term of 370 months' imprisonment, the trial court also expressed interest in imposing compensatory fines under ORS 137.101. In *470 accordance with that statute, the court indicated that the state must prove economic damages to the victim before the court could impose a compensatory fine. The state presented a letter to the court from a DHS worker that stated that the Mingus Mountain treatment had cost roughly $168,000. In the state's view, the letter provided the court with evidence that was sufficient to prove economic damages for a compensatory fine. Defendant objected to the compensatory fine, arguing, in part, that S did not suffer any economic damages.
The court imposed a punitive fine of $200 on each of Counts 1 through 10, 13, and 16 through 18. It also imposed three $50,000 compensatory fines, one for each of three convictions for compelling prostitution, Counts 16 through 18, which required defendant to "Pay a compensatory fine to victim: [S's name], c/o DHS." Additionally, the trial court stated that defendant may be able to pay the compensatory fines imposed because defendant was "about 28 years old now, I think. And I'm going to find that he appears to be healthy. Able to maintain some type of employment[.]" The court then immediately turned to a discussion about court-appointed attorney fees. Without stating that it was relying on the same facts to determine that defendant could pay the attorney fees, or making any findings explicitly for the purpose of imposing the fees, the trial court imposed $9,290 in court-appointed attorney fees on defendant. Defendant did not object. During the trial, defendant had testified that he had had little income even though he worked sporadically doing construction work, sold food at a farmer's market, and provided maintenance work at his apartment complex in exchange for a discount on rent.
On appeal, defendant assigns error to the court's imposition of the three compensatory fines, arguing that the court erred for three reasons. First, defendant argues that the prerequisites for imposing a compensatory fine were not met, specifically that S was not a victim who has suffered economic damages, and, thus, a compensatory fine payable to her cannot be imposed.[1] Second, defendant argues that *471 he does not have the ability to pay a $150,000 compensatory fine. Third, defendant argues that the court's order to pay three $50,000 compensatory fines was plainly erroneous because the court had already imposed separate $200 punitive fines on each of those same counts. Additionally, defendant assigns error to the trial court's imposition of $9,290 in court-appointed attorney fees.
In deciding whether the trial court erred when it imposed the three compensatory fines, we find defendant's third argument dispositive. In sum, we agree with defendant that the trial court plainly erred by ordering defendant to pay three $50,000 compensatory fines, and we exercise our discretion to correct the error. In addition, because the record is clear that the trial court could not impose any compensatory fine payable to S, we reverse as to those parts of the judgment.
As we explained in State v. Moore , 239 Or. App. 30, 34, 243 P.3d 151 (2010), " ORS 137.101(1) does not itself authorize a court to impose a fine, compensatory or otherwise. The source of authority to impose a fine for felonies rests in ORS 161.625(1) [.] * * * What ORS 137.101(1) does is authorize the court to order the state to share a portion of any fine that the court imposes with the victim or victims of the crime of conviction."
*1092 Thus, it is plain error for a trial court to impose a compensatory fine in addition to a punitive fine imposed under ORS 161.625(1). Id . at 35, 243 P.3d 151 ; State v . Nichols , 281 Or. App. 658, 660, 383 P.3d 988 (2016). Here, the trial court plainly erred in imposing three $50,000 compensatory fines on Counts 16 through 18 in addition to the $200 punitive fines imposed for Counts 16 through 18. And, for the same reasons articulated in Nichols , 281 Or. App. at 660, 383 P.3d 988, we exercise our discretion to correct the error and reverse the trial court's imposition of the three compensatory fines. See Ailes v. Portland Meadows, Inc. , 312 Or. 376, 382, 823 P.2d 956 (1991) (appellate court must exercise discretion to consider plain error). Unlike Moore and Nichols , however, we do not remand for resentencing because, here, the record *472 clearly demonstrates that a compensatory fine payable to S cannot be lawfully imposed.[2] That is because, as defendant has argued below and on appeal, the record demonstrates that the state produced no evidence that, under the compensatory fine statute, S is a victim who has incurred objectively verifiable economic damages for which she could recover in a civil action.
The compensatory fine statute, ORS 137.101(1), provides:
"Whenever the court imposes a fine as penalty for the commission of a crime resulting in injury for which the person injured by the act constituting the crime has a remedy by civil action, * * * the court may order that the defendant pay any portion of the fine separately to the clerk of the court as compensatory fines in the case. The clerk shall pay over to the injured victim or victims, as directed in the court's order, moneys paid to the court as compensatory fines under this subsection. This section shall be liberally construed in favor of victims."
ORS 137.101 does not authorize the imposition of a separate fine.[3] Instead, the compensatory fine statute authorizes the court to order the state to share with the victim or victims of the crime of conviction a portion of any fine imposed by the court. Moore , 239 Or. App. at 34. There are three prerequisites for ordering a compensatory fine under ORS 137.101(1) : criminal activities; a victim who incurred objectively verifiable economic damages for which the victim could recover in a civil action; and a causal relationship between the two. State v. Alonso , 284 Or. App. 512, 516, 393 P.3d 256 (2017). The state must prove all three prerequisites. Id.
"[V]ictim" and "economic damages" are statutorily defined. A "victim," as it is used in ORS 137.101, is defined in relevant part as follows:
"(a) The person or decedent against whom the defendant committed the criminal offense, if the court determines *473 that the person or decedent has suffered or did suffer economic damages as a result of the offense.
"(d) An insurance carrier, if it has expended moneys on behalf of a victim described in paragraph (a) of this subsection."
ORS 137.103(4).[4] And "economic damages" are, in relevant part, the "objectively verifiable monetary losses including but not limited to reasonable charges necessarily incurred for medical, hospital, nursing and rehabilitative services and other health care services." ORS 137.103(2) (incorporating definition from ORS 31.710(2)(a) ).
In this case, the record demonstrates that S has not suffered any economic damages for which she could recover in a civil action. The state relies on State v. Haines , 238 Or. App. 431, 242 P.3d 705 (2010), to contend that, although S did not personally pay for her stay at Mingus Mountain, the payment for counseling by a third party or insurance does *1093 not mean that a victim has not incurred economic damages.
In Haines , the trial court imposed a $1,000 compensatory fine on the defendant, who had been convicted of attempted first-degree sexual abuse of a juvenile, payable to the victim's parents. 238 Or. App. at 433-34, 242 P.3d 705. The compensatory fine was imposed based on the fact that the victim had attended counseling as a result of the crime. Id . That counseling was paid for by the victim's OHP insurance, the victim's mother testified, but she was unsure how long the coverage would continue. Id. at 433, 242 P.3d 705. On appeal, the defendant in Haines argued that the victim did not incur economic damages because the victim's insurer had paid the costs of counseling and any future cost to the parents was speculative. Id. at 434, 242 P.3d 705. Because the defendant's assignment of error was unpreserved, our analysis was constrained, in that we were only required to determine whether the imposition of a compensatory fine was an error apparent on the face of the record by determining if there was any evidence of economic *474 loss to the victim. See Id. at 433, 437-38, 242 P.3d 705. We concluded that under those circumstances-where an insurance company paid for medical expenses attributable to the defendant's conduct-any error in awarding the compensatory fine to the victim's parents, notwithstanding the fact that they had not paid the expenses themselves, was not plain. Id. at 437-38, 242 P.3d 705. We noted that a person "incurs economic loss" for purposes of a compensatory fine "when the person becomes subject to an economic obligation," regardless whether the person actually pays that obligation. Id. at 437, 242 P.3d 705 (citing State v. Romero-Navarro , 224 Or. App. 25, 29, 197 P.3d 30 (2008), rev. den. , 348 Or. 13, 227 P.3d 1172 (2010) (burial expenses paid for by a third party were still "incurred" by the victim's parents, under ORS 31.710(2)(a), because they would have had to pay them if the third party had not) ). We reasoned that the court had not plainly erred because, "[i]n any event, an insurer who pays money on behalf of a victim injured by a crime is expressly included in the definition of a 'victim' under ORS 137.103(4)(d)." In other words, where either an insured or an insurer is responsible for medical expenses attributable to a defendant's criminal conduct, and where either one is a party who is eligible to receive a compensatory fine under ORS 137.103, it is not "plain" that it is erroneous for a trial court to award a compensatory fine to one or the other. See id.
Here, by contrast, defendant raised below the issue of whether S is a person who is entitled to receive a compensatory fine and, in particular, raised the issue of whether there was sufficient evidence to support a finding that S became subject to an economic obligation as a result of her treatment at Mingus Mountain. In this context, where the issue was raised below, whether a different party, such as an insurer, might be eligible to receive a compensatory fine does not bear on the question before us, as it did in the plain error context of Haines . The only pertinent consideration is whether there is evidence permitting a finding that S became liable for the costs of her care at Mingus Mountain.
The record contains no evidence that S ever incurred any objectively verifiable economic obligation for the treatment and, therefore, ever suffered any economic damages as a result of defendant's crimes. The state produced no evidence *475 from which a court could infer that S, a child who was under the guardianship of DHS, could have been liable for the costs of the Mingus Mountain treatment. Consequently, the trial court cannot impose a compensatory fine payable to S, and the circumstances are not such that we are required to remand for resentencing. See ORS 138.222(5)(a)[5] (providing that remand is required if "the appellate court determines that the sentencing court, in imposing a sentence in the case, committed an error that requires resentencing"); State v. Edson , 329 Or. 127, 985 P.2d 1253 (1999) *1094 (remanding for resentencing required under ORS 138.222(5) when the court could still impose, in some way, the penalty that it had intended to impose).
We next address defendant's contention that the trial court erred by imposing $9,290 in court-appointed attorney fees because its determination that defendant is or may be able to pay the costs was not supported by the record. See State v. Pendergrapht , 251 Or. App. 630, 633, 284 P.3d 573 (2012) (under ORS 151.505 and ORS 161.665, a court lacks authority to require a defendant to pay attorney fees unless it has determined that the defendant is or may be able to pay them). Defendant acknowledges that his claim of error is unpreserved but asks us to review and correct the error as plain error. See ORAP 5.45(1) ; Ailes , 312 Or. at 382, 823 P.2d 956. The state contends that the court did not err, much less plainly err. In the state's view, the court's findings that defendant "appears to be healthy" and had been "[a]ble to maintain some type of employment" are supported by the record and are sufficient to support the determination of defendant's ability to pay. We disagree with the state, and we agree with defendant that, on the record here, the court committed plain error in imposing attorney fees in the absence of evidence that defendant "is or may be able" to pay them.
The state must prove that a defendant is or may be able to pay costs, and it is plain error to impose such costs in the absence of evidence of a defendant's ability to pay.
*476 State v. Coverstone , 260 Or. App. 714, 715-16, 320 P.3d 670 (2014). "For us to sustain an order to pay the costs of court-appointed counsel in a criminal case on plain error review, the record must contain evidence that permits an objective, nonspeculative assessment of the defendant's present or future capacity to pay court-appointed attorney fees." State v. Mendoza , 286 Or. App. 548, 550, 401 P.3d 288 (2017). "Such evidence may consist of information about the defendant's financial resources, educational background, work history, and anticipated future employment or educational status, to the extent there is a nonspeculative basis for assessing that future status." Id. at 550-51, 401 P.3d 288.
In Mendoza , we concluded that the evidence elicited by the trial court "did not allow a nonspeculative, objective assessment of defendant's present or future capacity to pay [attorney] fees." Id. at 552, 401 P.3d 288. In that case, the 17-year-old defendant was sentenced to 72 months' imprisonment and attorney fees of $1,858 were imposed after he was convicted of assault with a firearm and unlawful use of a weapon. Id. at 549-50, 401 P.3d 288. At sentencing, the court asked the defendant if there would be anything that would prevent him from working after his release from prison and to verify that he was not disabled. Id. Although the defendant had replied that he intended to work when released from prison, we stated that concrete evidence was required to permit a reasonable inference that the defendant had, at the time of sentencing, or may have, after serving a six-year sentence for felony convictions, employment available to him or the financial resources to allow him to pay fees. Id. at 552, 401 P.3d 288. We added that any finding otherwise was guesswork. Id . We held that, because the record lacked evidence that the defendant has or may have the ability to pay the attorney fees, the trial court's imposition of the fees was plain error. Id. at 552-53, 401 P.3d 288.
And in State v. Mejia-Espinoza , 267 Or. App. 682, 684, 341 P.3d 180 (2014), rev. den. , 357 Or. 164, 351 P.3d 52 (2015), the evidence in the record concerning the defendant's ability to pay was limited to the defendant's work history that included fruit picking and firefighting. In concluding that the trial court's imposition of attorney fees was plain error that we would exercise our discretion to correct, we observed that, although "the record contains some evidence that defendant *477 worked in the past, as a field worker and as a firefighter, there is no evidence as to (1) defendant's historic earnings from such work and (2) whether, given the nature of defendant's criminal convictions and the length of his incarceration, such employment (including especially, as a firefighter) will be plausibly available to defendant following his release." Id. at 684, 341 P.3d 180.
In this case, we conclude that the trial court plainly erred when it imposed court- *1095 appointed attorney fees because the record does not contain evidence that permits an objective, nonspeculative assessment of defendant's ability to pay the attorney fees. The trial court appears to have relied on the facts that it found to determine that defendant could pay the compensatory fines the court had imposed. Those facts-that defendant appeared healthy at the time of sentencing and had worked in the past-do not allow a nonspeculative, objective assessment of defendant's present or future capacity to pay fees. The record shows that defendant had a history of odd jobs that relied on defendant's physical labor and for which he made little income. There is no evidence in the record that defendant would have employment waiting for him after his release or that he had an education or employment history that would in any plausible way help him gain employment at age 60 after having spent over 30 years in prison. Moreover, the fact that defendant appeared to be healthy at the time he was sentenced to over 30 years of imprisonment is not evidence of any plausible prospect of employment far in defendant's future. The court's assessment of defendant's ability to pay the fees was not based on concrete facts that can support a reasonable inference that defendant had or may have the ability to pay $9,290 in court-appointed attorney fees when he is released from prison.
When reviewing for plain error, we must determine whether it is appropriate for us to exercise our discretion to correct the error. Coverstone , 260 Or. App. at 716-17, 320 P.3d 670. We consider, among other things, "the gravity of the error; the ends of justice in the particular case; how the error came to the court's attention; and whether the policies behind the general rule requiring preservation of error have been served in the case in another way." Ailes , 312 Or. at 382 n. 6, 823 P.2d 956. For *478 reasons similar to those articulated in Mendoza , we exercise our discretion to correct the plain error in this case. See 286 Or. App. at 553, 401 P.3d 288. In light of the attorney fee amount of $9,290; the nearly 31-year prison term; defendant's felony convictions and sex-offender status; and the lack of any evidence regarding defendant's education, financial status, or prospects of future employment when the record shows that he has only worked physical labor and odd jobs, the error's gravity weighs in favor of us correcting it. Accordingly, we reverse the portion of the judgment requiring defendant to pay $9,290 in court-appointed attorney fees.
Portion of judgment requiring defendant to pay compensatory fines and attorney fees reversed; otherwise affirmed.
Defendant argues in the alternative that the trial court's order is ambiguous as to whether the trial court intended S or DHS to receive the compensatory fine. The state contends that the order is unambiguous and that the only reasonable reading of the order's statement that defendant "Pay a compensatory fine to victim: [S's name] c/o DHS" is that the trial court intended to have the compensatory fine paid to S only. We agree with the state that the order is not ambiguous.
In Moore , because the record was unclear, we remanded for the parties and court to answer whether the court's intended recipient of the compensatory fine was a valid recipient under the compensatory fine statute. 239 Or. App. at 36, 243 P.3d 151 ; and see Nichols , 281 Or. App. at 660-61, 383 P.3d 988 (same).
ORS 161.625(1) authorizes sentencing courts to impose fines on persons convicted of felony crimes.
ORS 137.103(4) has been amended since defendant committed his crimes; however, because those amendments do not affect our analysis, we refer to the current version of the statute in this opinion.
Former ORS 138.222 (2013) was repealed in 2017 by Senate Bill (SB) 896. Or. Laws 2017, ch. 529, § 26 . Because the judgment in this case was entered before the January 1, 2018, effective date of SB 896, its provisions do not apply. Or. Laws 2017, ch. 529, § 28 (providing that SB 896 applies "on appeal from a judgment or order entered by the trial court on or after the effective date of this 2017 Act").