BALMER, J.
*1093 **177 This case concerns whether the trial court properly sentenced defendant to pay three $50,000 compensatory fines. As in several recent cases, this criminal sentencing question requires us to examine and to develop principles of tort law related to the recovery of economic damages. See State v. Gutierrez-Medina , 365 Or. 79, 442 P.3d 183 (2019) ; State v. Ramos , 358 Or. 581, 368 P.3d 446 (2016) ; State v. Islam , 359 Or. 796, 377 P.3d 533 (2016). Applying those principles, we agree with the Court of Appeals that the trial court erred in sentencing defendant to pay the compensatory fines that it did in this case, although we arrive at that conclusion by a different route. But we disagree, for reasons that we explain below, with the Court of Appeals' decision simply to reverse the erroneous portion of defendant's sentence; we conclude that a remand is required.
In 2012, defendant, an adult man, met S, a thirteen-year-old girl. S moved in with defendant, and he had sex with her multiple times. He also supplied her with methamphetamine. Defendant introduced S to his eventual codefendant, Toth, the manager of a strip club. Defendant and Toth agreed to have S work in the strip club, where she performed nude for customers and engaged in sexual acts with Toth and some of the club's customers. Toth was paid for those acts of prostitution, and he split the proceeds with defendant.
S ultimately left defendant and came into the legal custody of the Department of Human Services (DHS). DHS attempted to provide treatment for S in Oregon, but ultimately sent her to Mingus Mountain, an Arizona residential treatment center for girls who are emotionally or behaviorally at risk, including girls who have been sexually exploited. While at that facility, S disclosed to a counselor that she had been sexually abused by defendant.
After an investigation by law enforcement, defendant was charged with multiple crimes relating to his rape and sexual abuse of S. Defendant went to trial on those charges. Multiple witnesses testified against him, including S and Toth. During the trial, S's former caseworker testified that S had been in the legal custody of DHS during **178 the entire time that she was treated at Mingus Mountain. The caseworker also testified that all children in DHS custody qualify for the Oregon Health Plan and that stays at Mingus Mountain would be paid for by that insurance.
Defendant was convicted of two counts of second-degree rape, two counts of second-degree sodomy, two counts of second-degree unlawful sexual penetration, two counts of first-degree sexual abuse, one count of unlawful delivery of methamphetamine to a minor, and four counts of compelling prostitution. Three of the compelling prostitution convictions were based on acts that took place at the strip club managed by Toth.
The trial court indicated that it was interested in imposing compensatory fines, as allowed by ORS 137.101(1), on those three compelling prostitution convictions. The state, recognizing the need to demonstrate that the victim had suffered economic damages before a compensatory fine could be imposed, presented the court with a letter indicating that S's treatment at Mingus Mountain had cost approximately $168,000.
The trial court sentenced defendant to a total of 370 consecutive months in prison for the 13 convictions. The court also imposed a $50,000 compensatory fine on defendant on each of the three compelling prostitution convictions related to activities at the strip club. The judgment stated: "Pay a compensatory fine to: [S's name] c/o DHS." The trial court also imposed a $200 punitive fine on each of those convictions.[1]
*1094 Defendant appealed, assigning error to the imposition of the compensatory fines.[2] Defendant argued that the **179 trial court erred in imposing the compensatory fines for several reasons: (1) that the state had failed to establish the statutory prerequisites for imposing a compensatory fine, specifically, that S was not a victim who had suffered economic damages; (2) that the state had failed to establish that defendant had the ability to pay $150,000 in fines; and (3) that the trial court had plainly erred by imposing both a $50,000 compensatory fine and a $200 punitive fine on each of the compelling prostitution counts.
The Court of Appeals agreed with defendant's third argument and held that "the trial court plainly erred in imposing three $50,000 compensatory fines on Counts 16 through 18 [the compelling prostitution counts] in addition to the $200 punitive fines imposed for Counts 16 through 18." State v. Moreno-Hernandez , 290 Or. App. 468, 471, 415 P.3d 1088 (2018). The Court of Appeals then considered whether it was appropriate to remand the case for resentencing. The Court of Appeals concluded that "the record clearly demonstrates that a compensatory fine payable to S cannot be lawfully imposed," id. at 471-72, 415 P.3d 1088, and that there was therefore no reason to remand for resentencing, id. at 475, 415 P.3d 1088. The court reasoned:
"The record contains no evidence that S ever incurred any objectively verifiable economic obligation for the treatment and, therefore, ever suffered any economic damages as a result of defendant's crimes. The state produced no evidence from which a court could infer that S, a child who was under the guardianship of DHS, could have been liable for the costs of the Mingus Mountain treatment."
Id. at 474-75, 415 P.3d 1088. The Court of Appeals therefore reversed the portion of the judgment requiring defendant to pay the compensatory fines but did not remand for resentencing. Id. at 475, 415 P.3d 1088. The state petitioned for review, which we allowed.
On review, we approach the issue somewhat differently from the Court of Appeals and, while we agree with some of that court's legal conclusions, including that the trial court erred in imposing a compensatory fine directed to S, we disagree with its decision not to remand for resentencing.
**180 We begin by considering the question that the parties have focused on, whether the statutory prerequisites for designating a fine as compensatory were established in this case.
A sentencing court's authority to impose a compensatory fine derives from ORS 137.101(1), which provides:
"Whenever the court imposes a fine as penalty for the commission of a crime resulting in injury for which the person injured by the act constituting the crime has a remedy by civil action, unless the issue of punitive damages has been previously decided in a civil case arising out of the same act and transaction, the court may order that the defendant pay any portion of the fine separately to the clerk of the court as compensatory fines in the case. The clerk shall pay over to the injured victim or victims, as directed in the court's order, moneys paid to the court as compensatory fines under this subsection. This section shall be liberally construed in favor of victims."
ORS 137.101(1) must be understood in the context of a trial court's other sentencing authority. Several statutes permit a sentencing court to impose a "fine" as a penalty. Those statutes include ORS 161.625(1) (for classified felonies), ORS 161.635(1) (for classified *1095 misdemeanors), and ORS 161.655 (when the defendant is a corporation). In this case, defendant's compelling prostitution convictions were Class B felonies. ORS 167.017(2). Thus, under ORS 161.625(1), the sentencing judge was authorized to fine defendant "an amount, fixed by the court, not exceeding *** $250,000" on each of those counts.
The first sentence of ORS 137.101(1) states that "[w]henever the court imposes a fine as penalty for the commission of a crime *** the court may order that the defendant pay any portion of the fine separately to the clerk of the court as compensatory fines in the case." In other words, ORS 137.101(1) permits a trial court to direct that a portion of a fine imposed as a penalty under ORS 161.625(1) -or another statute authorizing the imposition of a fine-be designated as a compensatory fine and paid to an injured victim. However, ORS 137.101(1) governs only the decision to designate a portion of a fine as a compensatory fine; it is neither a source of authority for, nor a constraint on, a **181 sentencing court's initial imposition of "a fine as penalty for the commission of a crime."
Thus, ORS 137.101(1) envisions a two-step process for the imposition of compensatory fines. First, the court imposes a fine as a punishment for a crime, up to the maximum set by the applicable statute that authorizes the fine. The question of whether to impose a fine, and the amount to impose, is largely within the trial court's discretion and to be determined based on the factors ordinarily appropriate in sentencing. The relevant statutes provide only limited guidance as to how the trial court should determine the total amount of the fine:
"In determining whether to impose a fine and its amount, the court shall consider:
"(1) The financial resources of the defendant and the burden that payment of a fine will impose, with due regard to the other obligations of the defendant; and
"(2) The ability of the defendant to pay a fine on an installment basis or on other conditions to be fixed by the court."
ORS 161.645.[3]
The second step is the designation of some or all of that fine as a "compensatory" fine payable to a victim, as permitted by ORS 137.101(1). That second step is less discretionary. ORS 137.101(1) imposes three requirements that must be satisfied before a court may designate a portion of a fine as compensatory, as this court recognized in State v. Barkley , 315 Or. 420, 846 P.2d 390 (1993). The first is that the crime must "result[ ] in injury," ORS 137.101(1), which-as we held in Barkley -"does not require that the person or victim 'injured' as a result of a defendant's criminal activities must have suffered a 'direct physical injury' thereby." 315 Or. at 437, 846 P.2d 390.
The second requirement derives from the specification in ORS 137.101(1) that compensatory fines be paid "to **182 the injured victim or victims ***." "Victim" is defined for purposes of ORS 137.101 as:
"(a) The person or decedent against whom the defendant committed the criminal offense, if the court determines that the person or decedent has suffered or did suffer economic damages as a result of the offense.
"(b) Any person not described in paragraph (a) of this subsection whom the court determines has suffered economic damages as a result of the defendant's criminal activities.
"(c) The Criminal Injuries Compensation Account, if it has expended moneys on behalf of a victim described in paragraph (a) of this subsection.
"(d) An insurance carrier, if it has expended moneys on behalf of a victim described in paragraph (a) of this subsection.
"(e) Upon the death of a victim described in paragraph (a) or (b) of this subsection, the estate of the victim.
"(f) The estate, successor in interest, trust, trustee, successor trustee or beneficiary *1096 of a trust against which the defendant committed the criminal offense, if the court determines that the estate, successor in interest, trust, trustee, successor trustee or beneficiary of a trust suffered economic damages as a result of the offense."
ORS 137.103(4). Most of the subparts of that definition require that the victim have "suffered economic damages." "Economic damages" is defined, as pertinent here, to have "the meaning given that term in ORS 31.710, except that 'economic damages' does not include future impairment of earning capacity ***." ORS 137.103(2). And ORS 31.710 (2)(a), in turn, provides that
" '[e]conomic damages' means objectively verifiable monetary losses including but not limited to reasonable charges necessarily incurred for medical, hospital, nursing and rehabilitative services and other health care services, burial and memorial expenses, loss of income and past and future impairment of earning capacity, reasonable and necessary expenses incurred for substitute domestic services, recurring loss to an estate, damage to reputation that is economically verifiable, reasonable and necessarily **183 incurred costs due to loss of use of property and reasonable costs incurred for repair or for replacement of damaged property, whichever is less."
Thus, the second requirement for designating a part of a fine as compensatory is that the victim who will receive the proceeds have suffered "objectively verifiable monetary losses."
The third inquiry "is whether those damages were recoverable against the defendant in a civil action." Barkley , 315 Or. at 438, 846 P.2d 390. That requirement derives from the text of ORS 137.101(1), which allows a compensatory fine to be imposed only if there is an "injury for which the person injured by the act constituting the crime has a remedy by civil action * * *."
In this case, there is no dispute that the first requirement is satisfied. The sexual abuse that S suffered as a result of being compelled into prostitution qualifies as an injury. The parties part ways, however, on whether the second and third requirements are satisfied. We begin with the question of whether S suffered economic damages and, specifically, whether she "incurred" medical expenses.[4]
On review, the state argues that the cost of medical treatment at Mingus Mountain was incurred by S as economic damages and that the Court of Appeals erred in concluding that "[t]he record contains no evidence that S ever incurred any objectively verifiable economic obligation for the treatment ***." Moreno-Hernandez , 290 Or. App. at 474, 415 P.3d 1088. The state argues that medical expenses can be incurred based on treatment received, even where there is no obligation to pay, and that therefore S incurred medical expenses regardless of whether she paid for or was liable for the cost of her treatment.
Defendant argues that S incurred medical expenses only to the extent that she was "liable, obligated, or responsible **184 in law or equity for or otherwise subject to the payment of" those expenses. Moreover, defendant notes that S was a minor when she stayed at Mingus Mountain, and points to the common law rule that a minor's medical expenses are incurred by the minor's parents, not by the minor. Thus, defendant argues, S never incurred medical expenses.
The parties' conflicting interpretations of our decision in White v. Jubitz Corp ., 347 Or. 212, 219 P.3d 566 (2009), are central to their disagreement, so we turn to that case. White involved a plaintiff who had been injured when a bar stool collapsed. White , 347 Or. at 215, 219 P.3d 566. He was treated for his injuries and billed approximately $37,600. Because the plaintiff qualified for Medicare benefits, he did not end up having to pay any of that amount. Instead, "Medicare paid plaintiff's medical providers a total of $13,400"
*1097 and, in accordance with federal law, the providers "had 'written off' the remainder of their charges." Id. The plaintiff sued the bar, and the jury awarded him $37,600 in economic damages, based on the medical expenses. Id. at 217, 219 P.3d 566. The defendant argued that the plaintiff should not be permitted to recover the portion of the charges that had been written off. Id. at 215-18, 219 P.3d 566.
This court resolved those arguments by examining three sources of law: the common law collateral source rule, Oregon's collateral source statute, and ORS 31.710, the statutory definition of economic damages. As we explained, the common law collateral source rule "permits a plaintiff to recover damages from a tortfeasor and concomitant sums from a third party and to do so without regard to whether the plaintiff has purchased, earned, or must repay those third-party benefits." White , 347 Or. at 220-21, 219 P.3d 566.[5] For example, a plaintiff who has had her medical expenses paid by an **185 insurer is still entitled to recover those medical expenses as damages from a liable defendant. As a result, "[t]ortfeasors that cause the same injuries are responsible for the same damages, irrespective of the plaintiffs' receipt of benefits from, or legal relationships with, third-party benefit providers." Id. at 221-22, 219 P.3d 566. We also recognized that the collateral source statute, ORS 31.580, "modified the common-law collateral source rule and that it now provides the controlling law in actions for damages for bodily injury or death." White , 347 Or. at 222, 219 P.3d 566. A detailed discussion of how those principles apply, and the scope of the legislature's changes to the common law rule, is unnecessary to the resolution of this case. It is the third part of White -its discussion of economic damages-that is most relevant.
The defendant's position in White was that, under ORS 31.710 -the same definition of economic damages that applies in this case-the injured plaintiff "was not entitled to claim as economic damages amounts that he did not pay or have a legal obligation to pay," including the expenses that had been written off by the provider. 347 Or. at 231, 219 P.3d 566. In so arguing, the defendant effectively urged this court to interpret ORS 31.710 as abrogating the collateral source rule, at least in part, by preventing plaintiffs from recovering medical expenses because those expenses had been satisfied by third parties. This court declined that invitation. As we explained, reading ORS 31.710 consistently with the collateral source rule,
"Insofar as ORS 31.710 applies to this action, we do not read its definition of economic damages to be inconsistent with the result that ORS 31.580 [the collateral source statute] permits. A plaintiff who is injured and who obtains necessary medical treatment becomes 'liable or subject to' reasonable charges for that treatment and thereby 'incurs' them. ORS 31.710 does not require that a plaintiff also pay or otherwise satisfy those charges. Whether or by what means the plaintiff or a third party satisfies medical charges is a matter between the plaintiff, the third party, and the medical providers. ORS 31.710 does not make a plaintiff's right to assert a claim for economic damages against a tortfeasor dependent on those arrangements."
White , 347 Or. at 234, 219 P.3d 566.
**186 In its briefing in this case, the state focuses on the second sentence in that quotation, and appears to read it to establish that, in all cases, a plaintiff incurs medical expenses by obtaining necessary medical treatment. And the state notes that White cited section 924, comment f, of the Restatement (Second) of Torts which "provides that an 'injured person is entitled to damages for all expenses and for the value of services reasonably made necessary by the harm.' " White , 347 Or. at 236, 219 P.3d 566 (quoting *1098 Restatement (Second) of Torts § 924 comment f (1979) (emphasis in White )).
Defendant reads White more narrowly, arguing that, in resolving the collateral source rule-related questions before it, White had not extended "the scope of economic damages to include expenses the injured party has never incurred." He observes that the plaintiff in White was billed for the full amount of medical expenses that he sought to recover as economic damages, and that the court had made note of that fact in describing the scope of its holding. See, e.g. , White , 347 Or. at 242, 219 P.3d 566 ("[W]e decide that an injured person who receives medical services and who is billed for those services may seek the reasonable value of that treatment in a claim against a tortfeasor ***." (Emphasis added.)).
Much of that dispute goes beyond this case. Here we are faced with a more straightforward question: Whether White supplanted the common law rule that when a child is injured, and receives treatment for that injury in her minority, it is the parent who suffers any economic damages based on medical expenses.
As the Restatement (Second) of Torts explains,
"One who by reason of his tortious conduct is liable to a minor child for illness or other bodily harm is subject to liability to
"* * * * *
"(b) the parent who is under a legal duty to furnish medical treatment for any expenses reasonably incurred or likely to be incurred for the treatment during the child's minority."
Restatement § 703 (1977). In Oregon, that principle has been recognized both by statute and in the common law. In **187 Palmore v. Kirkman Laboratories , 270 Or. 294, 527 P.2d 391 (1974), this court stated that "[i]t is generally held that medical expenses incurred due to the negligent injury of a minor unemancipated child are damages suffered by the parent and not the child." That rule is consistent with-indeed, it is the underlying premise of- ORS 31.700, which provides that
"(1) When the guardian ad litem or conservator of the estate of a child maintains a cause of action for recovery of damages to the child caused by a wrongful act, the parent, parents, or conservator of the estate of the child may file a consent accompanying the complaint of the guardian ad litem or conservator to include in the cause of action the damages as, in all the circumstances of the case, may be just, and will reasonably and fairly compensate for the doctor, hospital and medical expenses caused by the injury.
"(2)(a) If the consent is filed as provided in subsection (1) of this section and the court allows the filing by a guardian ad litem, no court shall entertain a cause of action by the parent, parents or conservator for doctor, hospital or medical expenses caused by the injury."
ORS 31.700 carves out a partial exception to the common law rule, allowing the parents' and child's damages to be recovered in a single action, brought by the child's guardian ad litem or conservator.
Palmore illustrates the significance of both the common law rule and ORS 31.700 (then codified at former ORS 30.810 (1973), renumbered as ORS 31.700 (2003) ). Palmore was a personal injury lawsuit stemming from a car accident. The four-year-old plaintiff had been "a passenger in an automobile being driven by his mother, his guardian ad litem, which collided at an intersection with a vehicle being driven by defendant Fowler ***." Palmore , 270 Or. at 296, 527 P.2d 391. Fowler asserted as an affirmative defense against the plaintiff's claim for medical expenses that the plaintiff's mother had been guilty of contributory negligence. Id. at 305, 527 P.2d 391. This court explained:
"Although no Oregon cases have been called to our attention on this precise issue, the majority of case law from other jurisdictions would indicate that the trial court erred in sustaining plaintiff's demurrer [to the affirmative defense].
**188 It is generally held that medical expenses incurred due to the negligent injury of a minor unemancipated child are damages suffered by the parent and not the child. See cases at Annotation, 32 A.L.R.2d 1060, 1069-1075 (1953). This rule is consistent with ORS 109.010 which places responsibility *1099 on the parents to maintain their children, and with ORS 109.020 which limits access to the child's estate for the payment of his expenses."
Id. at 305-06, 527 P.2d 391. Even though the parents had allowed the plaintiff to pursue the medical expenses in his own cause of action, as provided by former ORS 30.810 (1973), "[t]his statute, however, does not alter the fact that the claim for medical expenses is in the parent and the contributory negligence of the parent may operate to bar the recovery." Palmore , 270 Or. at 306, 527 P.2d 391. Palmore therefore held that the affirmative defense should have been allowed. Palmore emphasized, "In this case we are merely recognizing the contributory negligence of the real party in interest as to the claim for medical expenses." Id . at 307, 527 P.2d 391.[6]
White did not discuss Palmore or ORS 31.700, and it would be unusual, to say the least, for this court, sub silentio , to overrule a longstanding precedent and to nullify a statute. Moreover, White discussed the attribution of medical expenses only in the context of the collateral source rule, not parental duties. We therefore conclude that Palmore remains good law and that, in this context, the state's reliance on White is misplaced.
This case raises the additional question of how that common law rule applies when a child is neither emancipated nor in the custody of her parents, but instead in the legal custody of DHS. That question is not one that we had occasion to consider in Palmore , but Palmore nevertheless suggests an answer. In Palmore , this court justified its adoption of the rule by reference to " ORS 109.010 which places **189 responsibility on the parents to maintain their children ***." Palmore , 270 Or. at 306, 527 P.2d 391. That reasoning is in line with the Restatement 's articulation of the rule which links the parent's liability to his or her "legal duty to furnish medical treatment ***." Restatement § 703. Analogously, DHS has a duty to provide children in its legal custody with "care," including medical treatment. ORS 419B.373(3), (4). See also ORS 419B.346 (imposing additional duties on DHS when a ward in need of medical care is in its custody); OAR 413-010-0180(1)(d) (giving children and young adults in DHS custody a right "[t]o be provided routine and necessary medical, dental, and mental health care and treatment").
In holding that medical expenses incurred due to an unemancipated child's injury are "damages suffered by the parent and not the child," Palmore , 270 Or. at 305, 527 P.2d 391, Palmore resolves this case. We recognize that similar fact patterns may raise difficult questions about who, between DHS and the child's parents, should properly be understood to incur medical expenses. But to answer the question before us, it is enough to hold that S, who was in the legal custody of DHS for the entire period of time that she was treated at Mingus Mountain, did not herself "incur" medical expenses associated with that treatment.
The state seeks to avoid that conclusion in two ways. First, the state argues that a minor can still contract for medical expenses, and thereby incur those expenses in her own right. But there is no evidence that S did contract to pay her Mingus Mountain medical expenses. Second, the state argues that even in the absence of a contract, S might herself have been liable for the costs of treatment at Mingus Mountain under a quantum meruit theory if, hypothetically, neither her insurer nor DHS had paid the bill. We need not address whether such a claim by Mingus Mountain against S would be viable under these circumstances. Such a legally and factually thin theory of economic damages is insufficient for the state to establish that S suffered "objectively verifiable monetary losses" as required by ORS 31.710(2)(a).
Because we hold that S did not suffer economic damages, it was legal error for the trial court to include in its sentence three *1100 $50,000 compensatory fines, ultimately **190 payable to S. We therefore do not need to resolve several other arguments that defendant has made, including that S also could not have recovered any economic damages that she suffered in a civil action and that the collateral source rule does not apply to the determination of whether a victim has "suffered" economic damages under ORS 137.103.
We turn to the proper disposition of this case in light of that error. The Court of Appeals reasoned that because (1) the trial court had already imposed a $200 punitive fine on each count, in addition to the compensatory fine, and (2) the sentencing court could not, on this record, designate any portion of those punitive fines as a compensatory fine payable to S, this was not a case where resentencing was required. Moreno-Hernandez , 290 Or. App. at 475, 415 P.3d 1088. See, e.g. , State v. Edson , 329 Or. 127, 139, 985 P.2d 1253 (1999) (remanding for resentencing where "there remain options that the trial court permissibly could adopt on resentencing").[7]
We disagree that there are no other sentencing options that the trial could have considered. First, although the trial court erred in sentencing defendant to pay a compensatory fine directed to S, it may be that a compensatory fine could be imposed, payable to another victim-although we do not resolve the question of whether DHS or the Oregon Health Authority would qualify as victims under ORS 137.101(1). Second, as discussed above, the procedure contemplated by ORS 137.101(1) is that a trial court first imposes a fine and then, as a second step, considers whether to designate some or all of that fine to be payable to the victim as a compensatory fine-provided that the statutory prerequisites of a compensatory fine are satisfied. That statute makes it plain that punitive fines and compensatory fines are interrelated, and deleting the compensatory fines from the sentence, as the Court of Appeals did, may well not have captured the trial court's intent regarding what it determined to be the appropriate overall sentence. In these circumstances, where we have concluded that the trial court **191 committed legal error, and that there may be other permissible options that the trial court could adopt on resentencing, the appropriate disposition is to remand to the trial court for resentencing.
We recognize that the Court of Appeals held that the trial court erred in separately imposing punitive fines and compensatory fines, and the trial court does not seem to have approached sentencing as ORS 137.101 intended. In our view, however, that legal error and the uncertainty as to what the trial court would have done had it approached sentencing as contemplated by ORS 137.101 are reasons to remand, not reasons that a remand is unnecessary.[8] Accordingly, as required by former ORS 138.222 (2015), we reverse the sentence of the trial court and remand to that court for resentencing.
The decision of the Court of Appeals is affirmed in part and reversed in part. The judgment of the circuit court is reversed, and the case is remanded to the circuit court for further proceedings.

As we discuss in more depth below, several statutes allow a sentencing court to impose a "fine" on a defendant who has been convicted of a crime. See ORS 161.625(1) ; ORS 161.635(1) ; ORS 161.655. In order to distinguish such "fines" from compensatory fines, the parties and the Court of Appeals refer to them as "punitive fines." That nomenclature may be misleading. The statutes refer to those fines simply as "fines," not as "punitive fines." And compensatory fines are no less punitive than other fines, as they are paid by a defendant as punishment for a crime. Nevertheless, for the sake of clarity, we will occasionally use the term "punitive fine" to refer to a "fine" that is not a compensatory fine.

Defendant also assigned error to the trial court's imposition of court-appointed attorney fees on defendant. The Court of Appeals agreed with defendant that the trial court had erred and reversed that portion of the judgment. State v. Moreno-Hernandez , 290 Or. App. 468, 477-78, 415 P.3d 1088 (2018). The state has not sought review of that ruling.

ORS 137.286(2) sets forth the minimum fine for a felony-$200-although it also permits the sentencing court to waive that minimum if it "would be inconsistent with justice in the case." ORS 137.286(3).

ORS 137.103(4) requires that the victim have "suffered *** economic damages" (emphasis added) and ORS 31.710 defines economic damages to include "reasonable charges necessarily incurred " (emphasis added) for medical expenses. Defendant argues that "suffered" has a narrower meaning than "incurred," so that even if S "incurred" medical expenses, she did not necessarily "suffer" economic damages. Because we conclude that S did not incur medical expenses, we need not address whether the word "suffered" imposes any additional requirements.

Both the common law rule and the statutory rule contain a related evidentiary component. As we explained in Reinan v. Pacific Motor Trucking Co ., 270 Or. 208, 213, 527 P.2d 256 (1974) :
"The salutary policy underlying the collateral source rule is simply that if an injured party receives some compensation from a source wholly independent of the tortfeasor such compensation should not be deducted from what he might otherwise recover from the tortfeasor. The evidentiary consequence of this rule is that proof of such payments is generally regarded as inadmissible in view of its potential misuse by the jury."

In Denton v. Int'l Health & Life Ins. Co ., 270 Or. 444, 451-52, 528 P.2d 546 (1974), we did recognize that a minor, and not his parent, was the "insured person" permitted to bring an action to recover benefits pertaining to medical expenses under an insurance policy. That holding, however, was based on the policy's text, "which clearly indicate[d] that the parties intended that the 'insured person' could only be one who suffered actual physical injury, thereby necessitating medical treatment." Id . at 451, 528 P.2d 546.

Edson interpreted and applied former ORS 138.222 (2015), repealed by Or. Laws 2017, ch. 529, § 26. Because the judgment in defendant's case was entered prior to January 1, 2018, former ORS 138.222 (2015) applies to this appeal. See Or. Laws 2017, ch. 529, § 28.

Because we remand for resentencing, we need not consider other issues raised by the parties, including whether, as defendant argued in the Court of Appeals, the trial court gave insufficient consideration to defendant's ability to pay when imposing fines.