Argued and submitted March 29, 2016; compensatory fine reversed, remanded for resentencing, otherwise affirmed March 22, 2017

## STATE OF OREGON,
*Plaintiff-Respondent,*

*v.*

## JAIME ALONSO,
*Defendant-Appellant.*

Washington County Circuit Court
C132730CR; A156777

393 P3d 256

Erin J. Snyder, Deputy Public Defender, argued the cause for appellant. With her on the opening brief was Peter Gartlan, Chief Defender, Office of Public Defense Services. With her on the reply brief was Ernest G. Lannet, Chief Defender, Criminal Appellate Section.

Greg Rios, Assistant Attorney General, argued the cause for respondent. With him on the brief were Ellen F. Rosenblum, Attorney General, and Paul L. Smith, Deputy Solicitor General.

Before Sercombe, Presiding Judge, and Tookey, Judge, and DeHoog, Judge.

## TOOKEY, J.

Defendant appeals a judgment of conviction for third-degree rape, ORS 163.355, assigning error to the trial court's imposition of a $3,000 compensatory fine. Defendant argues that the trial court lacked the statutory authority under ORS 137.101 to impose a compensatory fine because the victim's tattoo was not the direct result of his crime and because the victim could not recover the costs for the tattoo removal in a civil action against defendant. We conclude that the state failed to advance a valid theory of civil liability under which the victim could recover the costs of the tattoo removal, and, accordingly, we reverse the compensatory fine, remand for resentencing, and otherwise affirm.

The following facts are undisputed. Defendant was in an ongoing sexual relationship with the minor victim who was under the age of 16 at the time. In the course of that relationship, the victim became pregnant and gave birth to their son. When their son was about six months old, defendant took the victim to someone's home to get a tattoo. The victim testified that she got a tattoo of defendant's name on her neck because defendant wanted her to prove that she was serious about their relationship, otherwise defendant said that he would leave her and that he would not help her to raise their son.

Defendant was charged with multiple sexual offenses, including third-degree rape, for having sexual intercourse with a child under 16 years of age.[1] The indictment alleged that the rape occurred "on or between January 1, 2012 and April 3, 2012." Defendant pleaded guilty to third-degree rape, expressly admitting in his plea petition to the crime as alleged in the indictment. The trial court entered a judgment of conviction for third-degree rape based on defendant's guilty plea and dismissed the remaining counts.

At the restitution hearing, the parties disputed whether the trial court could order defendant to pay the $3,000 requested by the victim for tattoo removal. Defendant

---

[1] ORS 163.355(1) provides, "A person commits the crime of rape in the third degree if the person has sexual intercourse with another person under 16 years of age."

argued that the trial court could not order defendant to pay for the tattoo removal because "there's not a causal nexus between rape in the third degree and the tattoo." Defendant contended that "[p]roof of 'economic damages' as a result of a crime requires more than evidence of a 'but-for' connection between an objectively verifiable monetary loss and the crime; it requires evidence that a loss could be recovered 'against the defendant in a civil action.'" The state responded that the victim "would not have, in fact, gotten the tattoo but for the defendant" and that "it doesn't have to be that the rape itself is the act that caused the tattoo," it can be for any injury that "flow[s] out of or [is] related to a crime." The state did not advance a particular theory of civil liability. Rather, it asserted that the victim could "recover the damages if there were a civil lawsuit" because "they're economic damages * * * flowing out of the sexual relationship that she had with the defendant."

The trial court rejected defendant's argument and explained the basis for its decision:

"I'm satisfied that the state has met its burden of proof on this and that this is a compensable type of damage. I would analyze it this way: Part of it—part and parcel of a Rape 3-type allegation is that the person who is the victim is too young to consent to sexual relations.

"Why—why is that of concern? Because persons who are too young to consent to sexual relations are subject to being swayed by persons who are older than they are. And they are particularly prone to the kinds of—of poor decision making that can result in * * * damage.

"* * * * *

"The child victim, in this case, not only was subjected to sexual activity, but that sexual activity resulted in a child [being born], meaning that she became that much more vulnerable * * * to the * * * imposition upon her will of the defendant to, as the [prosecutor] stated it, brand her as—as his.

"* * * * *

"And in this particular situation, the victim was under an enormous amount of emotional and psychological pressure from the defendant to take on a tattoo, which she

testified she did not want to take on, but did, hoping that it might result in something somewhat more favorable for the infant that was born as a result of this inappropriate relationship."

The trial court stated that "the $3,000 should properly be a part of the restitution order," but decided to order it as a compensatory fine so that the victim "could engage the services of the tattoo remover sooner than later." Accordingly, the trial court entered a supplemental judgment ordering defendant to pay a $3,000 compensatory fine for the victim's tattoo removal.

On appeal, defendant reprises his argument that the victim's tattoo was not the direct result of his crime and that the victim could not recover the costs for the tattoo removal in a civil action against defendant and, thus, that no compensatory fine should have been imposed. The state responds that it established the necessary causal link because the "chain of events reveals that defendant's rape and impregnation of the victim resulted in her submitting to a tattoo that she would not have otherwise obtained due to defendant's threats to cut off support to her and her child."[2]

The issue presented by this case is whether the trial court had the statutory authority under ORS 137.101 to impose a compensatory fine. "We review a trial court's imposition of a compensatory fine for legal error." *State v. Grismore*, 283 Or App 71, 73, 388 P3d 1144 (2016). ORS 137.101(1) provides:

"Whenever the court imposes a fine as penalty for the commission of a crime resulting in injury for which the

___

[2] The state also contends that "defendant's argument that the state failed to prove that the victim had a civil remedy is unpreserved and without merit." We disagree; defendant's argument at the restitution hearing was broad enough to encompass the imposition of a compensatory fine or restitution and developed in enough detail for the state to respond to it and for the court to evaluate it. *See Peeples v. Lampert*, 345 Or 209, 220, 191 P3d 637 (2008) (the touchstone of preservation principles is to ensure "procedural fairness to the parties and to the trial court"). Defendant's citation to several compensatory fine cases, *State v. Barkley*, 315 Or 420, 846 P2d 390, *cert den*, 510 US 837 (1993), *State v. Forrester*, 130 Or App 459, 882 P2d 1124 (1994), and *State ex rel Juv. Dept. v. S. J. P.*, 247 Or App 698, 271 P3d 124 (2012), and his argument that the state must prove not only but-for causation, but also "that a loss could be recovered against the defendant in a civil action," raised the issue of whether the cost of the victim's tattoo removal could be recovered as a compensatory fine under ORS 137.101.

person injured by the act constituting the crime has a remedy by civil action, unless the issue of punitive damages has been previously decided on a civil case arising out of the same act and transaction, the court may order that the defendant pay any portion of the fine separately to the clerk of the court as compensatory fines in the case. The clerk shall pay over to the injured victim or victims, as directed in the court's order, moneys paid to the court as compensatory fines under this subsection. This section shall be liberally construed in favor of victims."

There are three prerequisites for ordering a compensatory fine under ORS 137.101: (1) criminal activities, (2) economic damages, and (3) a causal relationship between the two. *State v. Donahue*, 165 Or App 143, 146, 995 P2d 1202 (2000).[3] The second prerequisite is generally referred to as "economic damages," but "[t]hat statement of prerequisites assumes that the person injured by the crime has a remedy by civil action * * * for the injuries [the person] suffered as a result of the crime." *State v. Haines*, 238 Or App 431, 436 n 3, 242 P3d 705 (2010). The state bears the burden of proving all three of the prerequisites. *State ex rel Juv. Dept. v. S. J. P.*, 247 Or App 698, 702, 271 P3d 124 (2012).

We begin our analysis by briefly identifying defendant's criminal activities and the injury for which the court ordered the compensatory fine. As to the first prerequisite, defendant's guilty plea limited his criminal activity to having sexual intercourse with the victim on or between January 1, 2012 and April 3, 2012.

With regard to the second prerequisite, as we have stated, "a compensatory fine is authorized only when the injury for which it 'compensates' is one for which there is a remedy by civil action." *State v. Choat*, 251 Or App 669, 673, 284 P3d 578, *rev den*, 352 Or 666 (2012). Here, the compensatory fine that the court ordered defendant to pay was intended to compensate the victim for the cost of removing the tattoo on her neck. *See State v. Barkley*, 315 Or 420, 438, 846 P2d 390, *cert den*, 510 US 837 (1993) (compensatory

---

[3] In 2005, after *Donahue* was decided, the legislature amended ORS 137.103 defining "victim" so ORS 137.103 refers to "economic damages" rather than "pecuniary damages." Or Laws 2005, ch 564, § 1. That change has no effect on our analysis in this case.

fine was "intended to compensate" victim's mother for lost wages while she accompanied her daughter to court); *S. J. P.*, 247 Or App at 700 (compensatory fine intended to compensate victim for airfare expenses); *State v. Forrester*, 130 Or App 459, 463 n 5, 882 P2d 1124 (1994) (compensatory fine intended to compensate members of victim's family for wage loss and travel expenses). We note that the second prerequisite is generally referred to as "economic damages" because "ORS 137.101 incorporates, by reference, the definition of 'victim' in the restitution statute," *Forrester*, 130 Or App at 462, as any person who "has suffered economic damages as a result of the defendant's criminal activities." ORS 137.103(4)(b). "Therefore, to be a victim under ORS 137.101, one must have suffered economic damages * * * [as] defined by ORS 137.103(2), which[, with one exception not relevant here,] incorporates the definition provided by ORS 31.710(2)(a)."[4] *Haines*, 238 Or App at 436.

The third prerequisite under ORS 137.101, the causal relationship, reflects the statutory requirement that the "crime *result*[s] in injury for which the person injured * * * has a remedy by civil action." (Emphasis added.) In other words, under ORS 137.101, a defendant's criminal activities must result in "economic damages." *Haines*, 238 Or App at 436-37. As the Supreme Court has explained, under *State v. Ramos*, 358 Or 581, 368 P3d 446 (2016), "whether a crime has 'resulted in' economic damages under ORS 137.106 is a function of two considerations, namely, causation and foreseeability." *State v. Gerhardt*, 360 Or 629, 635, 385 P3d 1049 (2016). Although the court in *Ramos* was interpreting the term "economic damages" as it is used in the restitution statute, ORS 137.106, the court's analysis is also applicable here because, as previously noted, "economic damages" is a

---

[4] ORS 31.710(2)(a) provides:

"'Economic damages' means objectively verifiable monetary losses including but not limited to reasonable charges necessarily incurred for medical, hospital, nursing and rehabilitative services and other health care services, burial and memorial expenses, loss of income and past * * * impairment of earning capacity, reasonable and necessary expenses incurred for substitute domestic services, recurring loss to an estate, damage to reputation that is economically verifiable, reasonable and necessarily incurred costs due to loss of use of property and reasonable costs incurred for repair or for replacement of damaged property, whichever is less."

defined statutory term that also applies to the compensatory fine statute, ORS 137.101. *See* ORS 137.103 (providing statutory definitions for terms used in ORS 137.101 to 137.109).

In *Ramos*, the court noted that "neither ORS 137.106 nor the definition of economic damages in ORS 31.710(2)(a) requires that the damages awarded in restitution be the damages that would be recoverable in a civil action." 358 Or at 588. Nevertheless, the court construed ORS 137.106 to have a civil law reasonable foreseeability "limiting concept" because the legislature "adopted the definition of 'economic damages' that applies in civil actions and described the required causal connection between a defendant's criminal activities and a victim's damages in terms that are used in civil actions." *Id.* at 596.

Like ORS 137.106, the restitution statute, ORS 137.101 incorporates, by reference, the definition of "economic damages" under ORS 137.103. Moreover, in 2005, amendments to ORS 137.106 eliminated the reference to damages as those "which a person could recover against the defendant in a civil action." *Ramos*, 358 Or at 588-89; Or Laws 2005, ch 564, §§ 1-2. However, the legislature has chosen to retain the requirement under ORS 137.101 that the damages awarded as a compensatory fine are for an injury that the victim "has a remedy by civil action." ORS 137.101(1). "The general rule in civil actions is that damages are only recoverable if they are reasonably foreseeable." *Ramos*, 358 Or at 596. "We can presume that the legislature was cognizant of the limitation that the civil law imposes on the recovery of such damages." *Id.* Accordingly, the "traditional civil law concept of reasonable foreseeability" applies to the imposition of a compensatory fine under ORS 137.101 to determine whether the claimed damages are too attenuated to be recoverable. *Id.* at 596-97.

Likewise, the factual "but-for" causation that ORS 137.106 and ORS 137.101 require is a civil law concept. *Id.* at 593. As we have stated, that does not require "that the [economic] damage must always be the direct result of the defendant's criminal activity." *State v. Stephens*, 183 Or App 392, 396, 52 P3d 1086 (2002); *see Ramos*, 358 Or at

597 (declining to apply the "direct" causation standard proposed by the defendant). However, under *Ramos*, there are limitations to the court's ability to impose restitution or a compensatory fine when the damage is not the direct result of the defendant's criminal activity. When a statute does not impose criminal responsibility for the type of harm that occurred, "reasonable foreseeability is a limiting concept that a court must consider in deciding whether to award the particular damages sought." 358 Or at 594-96 (a *Fazzolari v. Portland School Dist. No. 1J*, 303 Or 1, 734 P2d 1326 (1987) foreseeability inquiry is not necessary to impose restitution for property damage resulting from second-degree arson, whereas a foreseeability inquiry is necessary to determine whether restitution may be imposed for injuries sustained by the victim in a car accident while responding to the fire alarm). Here, a tattoo is not the type of harm or conduct that ORS 163.355 (third-degree rape) imposes criminal responsibility for, and it was not the direct result of defendant's criminal activities. Thus, in this case, "reasonable foreseeability is a limiting concept that a court must consider in deciding whether to award the particular damages sought as" a compensatory fine. *Ramos*, 358 Or at 596.

"[T]he test that a court uses to determine whether damages are too attenuated to be recoverable [to impose a compensatory fine] is whether a reasonable person in the defendant's position would have foreseen that someone in the victim's position could reasonably incur damages of the same general kind that the victim incurred." *Id.* at 597. *See Stewart v. Jefferson Plywood Co.*, 255 Or 603, 608-09, 469 P2d 783 (1970) (limiting liability to harms that are of the general kind to be anticipated from the tortious conduct). The foreseeable risk is the "generalized risk of the types of incidents and injuries that occurred rather than the predictability of the actual sequence of events." *Fazzolari*, 303 Or at 13. A uniform civil jury instruction based on *Fazzolari*, UCJI 20.03, addresses the issue of foreseeability as a limit on liability:

"'A person is liable only for the reasonably foreseeable consequences of his or her actions. * * * [T]he harm suffered must be within the general class of harms that one

reasonably would anticipate might result from the defendant's conduct.'"

*Piazza v. Kellim*, 360 Or 58, 71 n 7, 377 P3d 492 (2016) (quoting UCJI 20.03).[5]

Regarding the second prerequisite, we conclude that the state failed to advance a valid theory of civil liability under which the victim could recover the costs of the tattoo removal in a civil action. The victim's neck tattoo was not a direct result of defendant's criminal activities and a tattoo is not the general kind of harm for which ORS 163.355 imposes criminal responsibility. Thus, the question in this case is whether the cost of the victim's tattoo removal was reasonably foreseeable. *Ramos*, 358 Or at 596. We conclude that the record is legally insufficient to support a finding that such harm-producing conduct and risk of additional injury was proven by the state to be a reasonably foreseeable consequence of defendant having sexual intercourse with the victim on or between January 1, 2012 and April 3, 2012.

Compensatory fine reversed; remanded for resentencing; otherwise affirmed.

---

[5] "Although uniform jury instructions are not sources of law, it is often useful to consider how sometimes elusive legal principles are understood and applied in practice by the trial judges and lawyers who are charged with following them." *Piazza*, 360 Or at 71 n 7.