Argued and submitted August 23; supplemental judgment reversed, remanded for resentencing, otherwise affirmed December 18, 2019; petition for review allowed May 27, 2020 (366 Or 492)
See later issue Oregon Reports

STATE OF OREGON,
*Plaintiff-Respondent,*

*v.*

RONALD ROY RIEKENS,
aka Ronald Roy Reikens,
*Defendant-Appellant.*

Multnomah County Circuit Court
17CR64424; A167148

457 P3d 347

Defendant challenges an order requiring him to pay restitution and a compensatory fine in connection with a conviction for second-degree theft. Someone other than defendant stole the victim's bicycle from a garage, damaged it, and left it leaning against some shrubs. Defendant found the bicycle and took it. Three days later, police recovered the bicycle from defendant. Defendant was convicted of second-degree theft, and the court held a restitution hearing. Ultimately, the court found that the bicycle had lost $1,700 in value between the time that it was taken from the garage and the time that police recovered it and, because the record did not establish the bicycle's value at the time that defendant took it, divided that amount equally between defendant and the original thief as "rough justice." On that basis, the court ordered defendant to pay $350 in restitution and a $500 compensatory fine (a total of $850, which is half of $1,700). On appeal, defendant argues that the state failed to prove that he caused any economic damages while he possessed the bicycle. The state argues that there is circumstantial evidence to support at least the compensatory fine. *Held*: The trial court erred as to both restitution and the compensatory fine, because the record does not support a nonspeculative inference that there was a causal relationship between defendant's criminal activities and the victim's economic damages.

Supplemental judgment reversed; remanded for resentencing; otherwise affirmed.

David F. Rees, Judge.

Mark Kimbrell, Deputy Public Defender, argued the cause for appellant. Also on the briefs was Ernest G. Lannet, Chief Defender, Criminal Appellate Section, Office of Public Defense Services.

Philip Michael Thoennes, Assistant Attorney General, argued the cause for respondent. On the brief were Ellen F.

Rosenblum, Attorney General, Benjamin Gutman, Solicitor General, and Jeff J. Payne, Assistant Attorney General.

Before Armstrong, Presiding Judge, and Tookey, Judge, and Aoyagi, Judge.

AOYAGI, J.

Supplemental judgment reversed; remanded for resentencing; otherwise affirmed.

Tookey, J., concurring in part, dissenting in part.

## AOYAGI, J.

A jury convicted defendant of second-degree theft, ORS 164.045, for unlawfully taking a bicycle that another person had stolen from the victim several days earlier, damaged, and left leaning against some shrubs. At sentencing, the trial court ordered defendant to pay $350 in restitution and a $500 compensatory fine. On appeal of the resulting supplemental judgment, defendant challenges that ruling, arguing that the state failed to prove that he caused any economic damages. The state responds that, although it is undisputed that the original thief damaged the bicycle, there was circumstantial evidence that defendant caused additional damage to the bicycle while it was in his possession and that such evidence was sufficient to support the order. We agree with defendant and, accordingly, reverse.[1]

We review a restitution order for legal error and are bound by the trial court's factual findings if they are supported by "any evidence in the record." *State v. McClelland*, 278 Or App 138, 141, 372 P3d 614, *rev den*, 360 Or 423 (2016). In determining the sufficiency of the evidence to support a restitution order, we view the evidence in the light most favorable to the state. *State v. Kirkland*, 268 Or App 420, 421, 342 P3d 163 (2015). As for compensatory fines, "[w]hether a trial court erred in imposing a compensatory fine is a question of law," and "the dispositive question is whether the record *** demonstrates that the trial court imposed a compensatory fine in the absence of supporting evidence." *State v. Neese*, 229 Or App 182, 184-85, 210 P3d 933 (2009), *rev den*, 347 Or 718 (2010). We state the facts in accordance with the standard of review, also noting evidence relevant to the parties' respective trial theories where it is significant to our discussion.

In fall 2017, someone stole the victim's cyclocross bicycle (a 2014 Focus Mares AX 2.0) from a garage where she stored it. It is undisputed that the person who initially

---

[1] Defendant separately assigns error to the judgment of conviction, arguing that the Sixth and Fourteenth Amendments to the United States Constitution require unanimous jury verdicts and that the trial court erred in giving the jury a nonunanimous-verdict instruction and in accepting a nonunanimous verdict. We reject those assignments of error without written discussion.

stole the bicycle was not defendant. Three days after the initial theft, defendant saw the bicycle leaning against some shrubs in someone's yard. The bicycle looked expensive, so defendant figured it was stolen, and according to his trial testimony, defendant thought that it might belong to a friend of his who had had a similar-looking bicycle stolen a few days earlier. Defendant decided to take the bicycle and, after a brief conversation with the homeowner, did so.

Defendant had the bicycle in his possession for three days. Defendant testified that, during that time, he was waiting to hear back from his friend and "was trying to work on fixing [the bicycle] up and trying to clean it up." Defendant explained that the bicycle was "fairly tore up" when he found it. Asked, "how so?" defendant responded, "There was paint splattered all over it. It was missing one cable. Both tires were flat. One of the shift levers was—the mount was busted loose near the handlebars." Asked what the purpose of trying to fix the bicycle was, defendant said, "I figured that if it was my friend's or if it was bad, I'd try to make it [a] little bit nicer than it was, try to fix it up a little bit so it'd be rideable again."

On the third day that the bicycle was in defendant's possession, someone spotted it chained to defendant's trailer (along with another bicycle) and told the victim, who called police, who recovered it from defendant. The police officer who recovered the bicycle testified at trial that, when he recovered it, the bicycle was in "reasonably decent condition" and that he did not believe that it was "beat up, dented, destroyed," although he added the caveat that he was "not a bike guy."

Defendant was charged with one count of first-degree theft, ORS 164.055(1), based on his having "unlawfully and knowingly commit[ted] theft of personal property, of the value of $1,000 of more." At trial, the state put on evidence that defendant had stolen the bicycle from the yard where he found it and that it was worth over $1,000. The state's evidence on the latter point included the victim's testimony that she had paid about $1,800 three years earlier to buy the bicycle new (approximately $1,600 for the bicycle itself and $200 for the saddle and pedals) and that, at the

time of trial, a slightly older bicycle of the same model would cost over $1,000 to purchase as a floor model. In response, defendant argued primarily that he did not intend to *steal* the bicycle—he claimed that he had taken it with the intention to return it to its rightful owner, who he thought might be his friend. Defendant argued secondarily that, in any event, the state had failed to establish that the bicycle was worth more than $1,000. On the latter point, defendant offered evidence that it would cost $364 to $599 to buy the same model (and same year) of bicycle used, depending on condition ("fair" to "excellent").

The trial court instructed the jury on both the charged crime of first-degree theft (a felony) and the lesser-included offense of second-degree theft (a misdemeanor). First-degree theft involves stolen property with a value of $1,000 or more, while second-degree theft involves stolen property with a value of less than $1,000 but at least $100. ORS 164.055; ORS 164.045. The jury found defendant guilty of second-degree theft.

The court proceeded to sentencing. When the state asked that defendant be ordered to pay restitution and a compensatory fine, defendant requested a restitution hearing, which was later held. At the hearing, the state relied in part on the trial evidence to meet its burden of proof. *See State v. Ixcolin-Otzoy*, 288 Or App 103, 104, 406 P3d 100 (2017), *rev den*, 362 Or 699 (2018) (the state bears the burden to prove the prerequisites for restitution and the nature and amount of economic damages); *State v. Alonso*, 284 Or App 512, 516, 393 P3d 256 (2017) (the state bears the burden to prove the prerequisites for a compensatory fine). However, it also produced a new witness: Sabatino, the victim's insurance claim representative. Sabatino testified, among other things, that, although he had not seen the bicycle himself, the victim had taken it to a professional bicycle shop and been told (as she reported back to him) that "there was no way to repair the bicycle" because it was "in such disarray, both from damage and the handlebars, the frame, and the mechanics of it being bent." On that basis, the insurer deemed the bicycle to have "no salvage value" and paid the victim $1,216.45, *i.e.*, the bicycle's replacement

cost ($2,094.55), less depreciation ($378.50), less the victim's deductible ($500.00).

At the conclusion of the restitution hearing, the court found that the victim's bicycle had been worth "approximately $1,700" at the time of the initial theft and that it was worth "zero" when recovered by police. As for the bicycle's value *when defendant took it*, the court said that that was a "struggle," because it "[didn't] know exactly how the record establishes what the value of the bike was at that moment in time." Ultimately, the trial court agreed with the state's "suggested compromise * * * to basically split the difference" between the original thief and defendant, with each being responsible for $850 damage, calling the result "rough justice." The court ordered defendant to pay $350 in restitution to the victim's insurer and a $500 compensatory fine to the victim.

On appeal, defendant challenges the restitution order and the imposition of the compensatory fine. To support a restitution order, the state must prove criminal activities, economic damages, and a causal relationship between the two. *State v. Akerman*, 278 Or App 486, 489-90, 380 P3d 309 (2016). "Those same prerequisites apply when imposing a compensatory fine under ORS 137.101." *State v. Donahue*, 165 Or App 143, 146, 995 P2d 1202 (2000). However, unlike restitution, the amount of a compensatory fine does not have to tie to the amount of damages—if a victim incurred *any* economic damages, the court may order a portion of a fine imposed as a penalty to be shared with the victim. *State v. Grismore*, 283 Or App 71, 76, 388 P3d 1144 (2016).

Defendant argues that there is no evidence that he caused *any* economic damages and that, consequently, the court erred in ordering restitution and in imposing a compensatory fine. In response, the state primarily contrasts (1) defendant's testimony at trial that, when he took the bicycle, he intended to "try to make it [a] little bit nicer than it was, try to fix it up a little bit so it'd be rideable again," and (2) the insurance claim representative's testimony at the restitution hearing that, after the police recovered the bicycle, a professional bicycle shop told the victim that "there was no way to repair the bicycle" because it was "in such

disarray, both from damage and the handlebars, the frame, and the mechanics of it being bent." The state argues that, because defendant viewed the bicycle as repairable, it must have been less damaged when he took it than it was when the bicycle shop assessed it. In the state's words, "the evidence was sufficient to establish the defendant caused some damage to the bicycle, because at the time he stole the victim's bicycle it was repairable and therefore had monetary value, but when it was recovered it was beyond repair and had no monetary value."

We disagree with the state that the foregoing evidence was enough to support a compensatory fine, let alone the restitution order. "Although the 'any evidence' standard is a low one, it nevertheless requires the evidence in the record to be sufficient to allow a reasonable inference in favor of the court's finding." *State v. Nguyen*, 268 Or App 789, 795, 344 P3d 49 (2015) (internal citation omitted). "The record must support a *nonspeculative* inference that there is a causal relationship between the defendant's criminal activities and the victim's economic damages." *Akerman*, 278 Or App at 490 (emphasis added).

Here, the inference urged by the state is not reasonable for three related reasons. First, defendant said that he intended to "try" to fix up the bicycle, not that it was in fact fixable. Second, whether a bicycle can be "fixed up" enough to make it "rideable again" is a different question from whether it can be restored to its original condition or otherwise repaired to the satisfaction of a professional bicycle shop. Third, there is no evidence that defendant had any specialized knowledge or expertise regarding bicycle repair or that, without such expertise, he would have noticed that components were "bent" in such a way as to render the bicycle unrepairable. Neither the bicycle nor a photograph of the bicycle was admitted into evidence, so there is no way to know whether the components looked "bent." The victim did not mention anything looking "bent." Sabatino never saw the bicycle and relied solely on what the victim relayed from the bicycle shop. The *only* evidence of how the bicycle appeared to an average person was the police officer's testimony that the bicycle was in "reasonably decent condition"

when he recovered it from defendant and was not "beat up, dented, destroyed." The evidence does not allow a reasonable inference that the bicycle was more repairable when defendant took it than when the police recovered it.

The state also briefly cites another aspect of defendant's trial testimony as evidence to support the court's order. When defendant was asked at trial what he meant when he said that the bicycle was "fairly tore up" when he took it, defendant described various types of damage but did not mention any "bent" components. Later, Sabatino testified at the restitution hearing that the bicycle shop had told the victim that there were several bent components. The state suggests that it is reasonable to infer that defendant caused some damage to the bicycle because of the difference between those descriptions. Although the state mentions that testimony in only a single sentence of its answering brief, we address it separately, because the dissent focuses on it.

We disagree with the state (and the dissent) that it is reasonable to infer from the cited evidence that the components that were determined to be "bent" when the bicycle was recovered were not "bent" when defendant took the bicycle. Defendant was never asked for a comprehensive description of the damage to the bicycle when he took it— he was asked only what he meant when he said that the bicycle was "fairly tore up." In the guilt phase of defendant's trial, the only disputed issue regarding the bicycle's value was whether it was more or less than $1,000, which turned on whose evidence the jury believed, not the bicycle's condition.[2] More importantly, even if one assumes that defendant

_____

[2] The dissent's assertion to the contrary, *see* 301 Or App at 459-60 (Tookey, J., dissenting), disregards defendant's trial strategy. While one may question that strategy with the benefit of hindsight—that is, with the benefit of knowing the insurance claim representative's testimony at the restitution hearing—it is apparent from the record that the defense trial strategy was to try to persuade the jury that defendant did not steal the bicycle or, alternatively, that the state had failed to prove that the bicycle was worth over $1,000. Consistently with that strategy, defendant moved for a judgment of acquittal on the charged crime of first-degree theft (a felony) but did not move for a judgment of acquittal on the lesser-included offense of second-degree theft (a misdemeanor) or request a jury instruction on third-degree theft (theft of property valued under $100). Also consistently with that strategy, no one *asked* defendant to describe all damage to the bicycle when he found it—and witnesses generally must answer the questions asked.

meant to give a comprehensive list of the damage that he noticed, there is no evidence that the "bent" components would have been noticeable to an average person. *See* 301 Or App at 460-61. The "bent" components were the only damage that defendant did not mention in his trial testimony that the insurance claim representative mentioned at the restitution hearing. Again, viewed in the light most favorable to the state, it would be speculation, not a reasonable inference, to find on this record that defendant caused the "bent" components.

Finally, the dissent raises a new argument for affirmance, which the state has never raised, and which is contrary to established principles regarding restitution proceedings. In short, the dissent argues that we should combine (1) the jury's implicit finding during the guilt phase that the bicycle was worth at least $100 when defendant stole it,[3] and (2) the trial court's finding at sentencing that the bicycle was worth "zero" when recovered, and, based on that combination of findings, conclude that defendant necessarily caused at least $100 damage to the bicycle. 301 Or App at 461-64 (Tookey, J., dissenting). Although that argument may have some intuitive appeal, it fails under scrutiny, even if we were willing to affirm on an alternative ground that the state never argued in the trial court and has not raised on appeal.

Whether the prerequisites for restitution have been met is a legal question that "will necessarily depend on the trial court's factual findings." *Kirkland*, 268 Or App at 424-25. In making those findings, the trial court "is not limited to the facts found by the jury, but may conduct additional fact-finding regarding the amount of damages during the sentencing." *Id*. at 425. That is precisely what occurred here. As a result, the record on which the trial court made its sentencing findings was entirely different from the record on which the jury found defendant guilty of second-degree theft.

---

[3] As previously mentioned, second-degree theft involves stolen property with a value of less than $1,000 but at least $100, ORS 164.045, and the jury found defendant guilty of second-degree theft, so the jury implicitly found that the bicycle was worth at least $100 when defendant stole it.

During the guilt phase of his trial, defendant made a strategic choice not to contest that the bicycle was worth at least $100 and instead to try only to persuade the jury that it was worth less than $1,000—which he did, thus avoiding a felony conviction. *See* 301 Or App at 454 n 2. As a result, the evidence *at trial* was that, three years earlier, the bicycle cost about $1,800 new; that defendant hoped to fix it up enough to make it rideable again, even though it was "fairly tore up"; that the police officer who recovered the bicycle from defendant perceived it to be in "reasonably decent condition" and not "beat up, dented, destroyed"; and that the replacement value of the bicycle was at least $364, even if it was only in "fair" condition. On that record, the jury found that the bicycle was worth at least $100 (but less than $1,000) when defendant took it. *At the restitution hearing*, however, the trial court heard significant additional evidence, including evidence of other damage ("bent" components), evidence that a professional bicycle shop did not consider the bicycle to be repairable, and evidence that the victim's insurer had deemed the bicycle to have "no salvage value." On that record, the trial court found that the bicycle had "zero" value when recovered. As for what the bicycle had been worth when defendant took it, the trial court expressly stated that it was a "struggle" to say, because it "[didn't] know exactly how the record establishes what the value of the bike was at that moment in time," and therefore resorted to "rough justice" instead.

At sentencing, a trial court must make findings based on *the evidence* in the record. *See* ORS 137.106 (requiring an order of restitution if the trial court "finds from the evidence presented that a victim suffered damages"); *State v. Herfurth*, 283 Or App 149, 158-59, 388 P3d 1104 (2016), *rev den*, 361 Or 350 (2017) (restitution must be based on "evidence in the record"); *State v. Onishchenko*, 249 Or App 470, 477-78, 278 P3d 63, *rev den*, 352 Or 378 (2012) (a compensatory fine depends on trial court factual findings "supported by evidence in the record"). Here, no one is challenging the trial court's finding that the victim's bicycle was worth "zero" when recovered, and certainly there was evidence at the restitution hearing to support that finding. But we cannot mix and match that finding with a finding the

jury made on a different record to "infer" that the bicycle's value went down during the three days that defendant possessed it. We especially cannot do so when the trial court necessarily rejected evidence on which the jury may have relied—the police officer's testimony about the condition of the bicycle when he recovered it—in favor of new evidence not heard by the jury—Sabatino's testimony as to the bicycle shop's assessment and the insurer's resulting "no salvage value" decision. We therefore disagree with the dissent's newly raised argument for affirmance, even if it were properly before us.

In conclusion, on this record, the evidence viewed in the light most favorable to the state was insufficient to allow a nonspeculative inference that defendant caused the "bent" components on the victim's bicycle or otherwise damaged the bicycle during the three days that he possessed it, so as to have caused economic damages to the victim and her insurance company. Accordingly, we reverse the supplemental judgment and remand for resentencing. *See State v. Moreno-Hernandez*, 365 Or 175, 190-91, 442 P3d 1092 (2019) (remanding for resentencing because "there may be other permissible options that the trial court could adopt on resentencing"); *State v. Tippetts*, 239 Or App 429, 432, 244 P3d 891 (2010) (we have "consistently remanded for resentencing in circumstances in which the sentencing court erred by imposing restitution in the absence of any evidence of economic damages").

Supplemental judgment reversed; remanded for resentencing; otherwise affirmed.

**TOOKEY, J.,** concurring in part, dissenting in part.

I agree with the majority that the evidence in the record in this case is legally insufficient to support the imposition of restitution. For that reason, we should accept the state's concession, made at oral argument, that the order imposing $350 in restitution to the victim's insurer was "essentially arbitrary" because there was "no specific evidence that the state adduced that would support a specific finding that defendant was responsible for $350 worth of

damages." Consequently, I concur that the trial court erred in imposing $350 in restitution in this case.

But, I write separately because I disagree with the majority that the evidence in the record in this case is legally insufficient to support the imposition of the compensatory fine imposed by the trial court.

"We review a trial court's imposition of a compensatory fine for legal error." *State v. Grismore*, 283 Or App 71, 73, 388 P3d 1144 (2016). "But we will uphold the trial court's findings of fact so long as there is any evidence in the record to support them." *State v. Smith*, 291 Or App 785, 788, 420 P3d 644 (2018) (so noting with respect to restitution); *see also State v. Onishchenko*, 249 Or App 470, 477-78, 278 P3d 63, *rev den,* 352 Or 378 (2012) ("[W]hen reviewing a trial court's factual finding regarding the value of stolen property, our task is to determine whether the finding is supported by 'any' evidence in the record."). Further, we review the evidence supporting the trial court's order "in the light most favorable to the state," *Smith*, 291 Or App at 788 (internal quotation marks omitted), and, if "findings of historical fact are not made on all pertinent issues and there is evidence from which such facts could be decided more than one way, we will presume that the facts were decided in a manner consistent with the court's ultimate conclusion," *State v. Ehly*, 317 Or 66, 75, 854 P2d 421 (1993).

In this case, I would conclude that legally sufficient evidence supports the trial court's imposition of the compensatory fine; legally sufficient evidence permits a reasonable inference that defendant caused at least some damage to the victim's bicycle's frame, handlebars, or mechanics while he was in possession of it. I would reach that conclusion for two reasons.

First, the record contains descriptions of the victim's bicycle both when defendant stole it and after the victim recovered it. During defendant's trial, defendant testified that, when defendant took the victim's bicycle, it was "fairly tore up." When asked, "How so?", defendant replied:

> "There was paint splattered all over it. It was missing one cable. Both tires were flat. One of the shift levers was— the mount was busted loose near the handlebars."

Notably, when describing the condition of the victim's bicycle at the time that he took it, defendant did not mention the frame, the handlebars, or the mechanics of the victim's bicycle being bent.

During the restitution hearing, however, a representative from the victim's insurer explained that, when the victim recovered the bicycle,

"[t]he bicycle was in such disarray, both from damage and the handlebars, the frame, and the mechanics of it being bent, that there was no way to repair the bicycle. There is no salvage value."

Further, the evidence demonstrates that defendant did not merely passively possess the victim's bicycle during the three days that he had possession of it. Instead, he spent time performing "work[]" on it. He also transported the victim's bicycle around Northeast Portland and chained it to a trailer that was attached to a different bicycle.

From that evidence, the trial court was permitted to infer that defendant's activities caused at least *some* damage to the victim's bicycle's frame, handlebars, or mechanics during the time that he possessed it. That is all that is required for the imposition of a compensatory fine. 301 Or App at 452 (noting "the amount of a compensatory fine does not have to tie to the amount of damages—if a victim incurred *any* economic damages, the court may order a portion of a fine imposed as a penalty to be shared with the victim"); *see also State v. Kellison*, 289 Or App 55, 56-57, 407 P3d 978 (2017), *rev den*, 362 Or 665 (2018) (rejecting the state's concession that "the record lacked sufficient evidence to establish that the victim had incurred pecuniary harm," and that therefore the trial court erred in imposing a compensatory fine, where the record contained evidence that the victim was "in therapy").

I also note that, when defendant was testifying in this case, he had a reason to list all visible damage to the victim's bicycle at the time that he took possession if it—*viz.*, to establish its limited monetary value, which could support a not guilty verdict. That is because the value of the property defendant stole was an element of the crime that

defendant was charged with committing and that defendant was on trial for—*i.e.*, first-degree theft, by theft of property the value of which was $1,000 or more. *See* ORS 164.055 (providing that one way a person can commit first-degree theft is committing "theft as defined in ORS 164.015" when the "total value of the property * * * is $1,000 or more"); ORS 164.115(1) ("Except as otherwise specified in this section, value means the market value of the property at the time and place of the crime, or if such cannot reasonably be ascertained, the cost of replacement of the property within a reasonable time after the crime.").

Indeed, at the close of the state's case, defendant moved for a judgment of acquittal on the first-degree theft charge that was then pending against him, contending that there was "not enough evidence" that the bicycle was worth over $1,000. The trial court denied that motion, reasoning that, given "competing evidence" in the record, the value of the bicycle was "a question for the finder of fact." Subsequently, during cross-examination while presenting his case, defendant provided testimony concerning the condition of the bicycle at the time that he took it—*viz.*, that "[t]here was paint splattered all over it," it "was missing one cable," both "tires were flat," and one "of the shift levers was—the mount was busted loose near the handlebars." At that time, defendant had a reason to provide a comprehensive list of damage to the bicycle: to establish its limited value at the time that he took possession to support the jury returning a not guilty verdict.[1]

I acknowledge that there is a possibility that, when defendant stole the victim's bicycle, defendant did not notice the bent frame, handlebars, and mechanics, and accordingly, during his trial, did not mention those aspects of the bicycle's condition when he was describing the state that the bicycle was in at the time that he stole it. That, however, is not the only inference that could be drawn from this record and drawing that inference would be inconsistent with our standard of review in this case, which requires us to review the evidence "in the light most favorable to the

---

[1] During his closing argument, defendant in fact argued that the jury should acquit him of first-degree theft because the value of the bicycle was less than $1,000.

state." *Smith*, 291 Or App at 788 (internal quotation marks omitted). Instead, I believe for the reasons described above, a reasonable and permissible inference is that defendant caused some damage to the victim's bicycle while he was in possession of it, transporting it around Northeast Portland, and performing "work[]" on it.[2] *See State v. Miller*, 196 Or App 354, 358, 103 P3d 112 (2004), *rev den*, 338 Or 488 (2005) ("The inference need not inevitably follow from the established facts; rather, if the established facts support multiple reasonable inferences, the jury may decide which inference to draw."); *West v. Allied Signal, Inc.*, 200 Or App 182, 192 n 4, 113 P3d 983 (2005) (noting that an inference is permissible and not "impermissible speculation" when "there is an experience of logical probability that an ultimate fact will follow a stated narrative of historical fact" and in such case "the jury is given the opportunity to draw a conclusion" (internal quotation marks omitted)).

The second reason I would conclude that legally sufficient evidence supports the trial court's imposition of the compensatory fine in this case is the jury's determination that defendant was guilty of second-degree theft, when that determination is coupled with the trial court's finding that, when it was recovered, the victim's bicycle was "worth zero"—a finding that defendant does not challenge on appeal and that is supported by evidence in the record.

In this case, the jury convicted defendant of second-degree theft, which required the jury to find that the market value of the victim's bicycle at the time that defendant stole it (or its replacement cost) was $100 or greater, but less than $1,000. *See* ORS 164.045 ("A person commits the crime of theft in the second degree if: (a) *** the person commits theft ***; and (b) The total value of the property *** is $100 or more and less than $1,000."); ORS 164.115(1) (defining "value"). That is because the value of the stolen property is an element of second-degree theft. ORS 164.045.

---

[2] In that regard, I note that expertise is not necessarily required to notice damage to a bicycle. *See, e.g.*, *Marks v. Columbia County Lumber Co.*, 77 Or 22, 26, 149 P 1041 (1915) ("[T]he habits, characteristics and disposition of the well-known domestic animal, the horse, is a matter of such common knowledge that it would not require the testimony of an expert to determine whether he was safe or not [to do certain work], even if that were a permissible field of expert inquiry.").

In fact, the trial court instructed the jury that for the state to prove "theft in the second degree," the state had to prove beyond a reasonable doubt that "the act"—*i.e.*, defendant stealing the victim's bicycle—"occurred on or about September 27, 2017," and that the "total value of the bicycle was $100 or more." The trial court further instructed the jury that the "total value of property that is subject to theft means either the market value of the property at the time and place of the crime, or, if such cannot be reasonably ascertained, the cost of replacement of the property within a reasonable time after the crime." Because it is "presumed that juries follow instructions, not disregard them," *Tenbusch v. Linn County*, 172 Or App 172, 178, 18 P3d 419, *rev den*, 332 Or 305 (2001), we must presume that the jury evaluated the condition of the bicycle at the time that defendant took possession of it and, based on the evidence presented at trial, found, beyond a reasonable doubt, that the value of the bicycle was $100 or more when defendant stole it. That finding is supported by evidence in the record and defendant does not contend otherwise.

At the restitution hearing, the trial court then found that the victim's bicycle, when it was recovered, was "worth zero." That finding too is supported by evidence in the record, we are bound by it, *see Smith*, 291 Or App at 788, and defendant does not contend otherwise.

A reasonable, permissible, and *necessary* inference from the jury's finding that the victim's bicycle had a value of $100 or more when defendant stole it, and the trial court's finding that the victim's bicycle was "worth zero" when it was recovered by the victim—both of which are supported by evidence in the record—is that during the three days that defendant was in possession of the victim's bicycle and was performing "work[]" on it, he caused at least some damage to it.

I am not aware of a case in which we have held that a jury's finding of fact with regard to the value of a stolen item can serve as a predicate fact for the imposition of a compensatory fine, however, the statutory scheme governing imposition of compensatory fines suggests that we should do so. As we have previously explained, "[t]here are

three prerequisites for ordering a compensatory fine under ORS 137.101: (1) criminal activities, (2) economic damages, and (3) a causal relationship between the two."[3] *State v. Alonso*, 284 Or App 512, 516, 393 P3d 256 (2017); *see also State v. Donahue*, 165 Or App 143, 145, 995 P2d 1202 (2000) ("[A] compensatory fine may be awarded only if the trial court finds that the victim has suffered pecuniary loss as a result of the defendant's criminal activities."). "'Criminal activities' means any offense with respect to which the defendant is convicted or any other criminal conduct admitted by the defendant." ORS 137.103(1).

Defendant's criminal activity in this case—that is, the offense for which defendant was convicted—was theft of a bicycle valued at $100 or more, but less than $1,000. That conviction is the predicate "criminal activity" from which the trial court was permitted to determine whether the victim suffered economic damages, and determine whether a causal relationship existed between defendant's criminal activity and the victim's economic damages. *See State v. Andrews*, 295 Or App 194, 198, 433 P3d 757 (2018), *rev allowed*, 364 Or 680 (2019) (the "scope of defendant's criminal activity, for purposes of the restitution award, was determined when the jury convicted him of engaging in 'offensive physical contact,' based on evidence that included his spitting at and punching the victim").

Justice Deady observed over 150 years ago that it is the "peculiar province" of the jury to decide "guilt or innocence." *Latshaw v. Territory*, 1 Or 140, 141-42 (1854). Disregarding the jury's finding regarding an element of the crime that defendant was convicted of, when evidence supports that finding and that finding is not challenged by defendant on appeal, and when disregarding that finding

---

[3] ORS 137.101(1) provides:

"Whenever the court imposes a fine as penalty for the commission of a crime resulting in injury for which the person injured by the act constituting the crime has a remedy by civil action, unless the issue of punitive damages has been previously decided on a civil case arising out of the same act and transaction, the court may order that the defendant pay any portion of the fine separately to the clerk of the court as compensatory fines in the case. The clerk shall pay over to the injured victim or victims, as directed in the court's order, moneys paid to the court as compensatory fines under this subsection. This section shall be liberally construed in favor of victims."

would be inconsistent with the statutory scheme envisioned by ORS 137.101(1) and ORS 137.103(1), would be an invasion of that "peculiar province."

In sum, with respect to the compensatory fine imposed by the trial court in this case, our inquiry reduces to whether there is *any* evidence to support a reasonable inference that defendant caused *any* damage to the victim's bicycle during the three days that he had possession if it and was performing "work[]" on it. Although this record is not as fulsome as one might wish, it is adequate to support the trial court's award of a compensatory fine.

Consequently, although I concur that the trial court erred in imposing $350 in restitution in this case and that we should remand for resentencing, I would conclude that legally sufficient evidence supported the trial court's imposition of the compensatory fine. For that reason, I respectfully dissent from my colleagues in the majority.